DAVE FOX (Bar No. 254651)
dave@foxlawapc.com
JOANNA FOX (Bar No. 272593)
joanna@foxlawapc.com
COURTNEY VASQUEZ (Bar No. 267081)
courtney@foxlawapc.com
**FOX LAW, APC**
225 W. Plaza Street, Suite 102
Solana Beach, CA 92075
Tel:  858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiffs and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON BRAND, JOHN FLODIN, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL GARDEN & PET COMPANY, a Delaware corporation, BREEDER'S CHOICE PET FOODS, INC., and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Aaron Brand and John Flodin (collectively, "Plaintiffs") bring this class action against Central Garden & Pet Company, Breeder's Choice Pet Food, Inc., and Does 1-50 (collectively, "Defendants") individually and on behalf of all others similarly situated, and allege the following upon personal knowledge as to Plaintiffs' acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

**I**

**<u>INTRODUCTION</u>**

1.      Defendants manufacture, market, advertise, and sell a line of dog and cat food called AvoDerm.  AvoDerm's purported foundation is the avocado, and the entire product line is centered around the fruit's acclaimed "super food" benefits that are superior for achieving a healthy skin and coat for dogs and cats. Indeed, Defendants' central and uniform marketing claim is that "avocados are a ***key ingredient in AvoDerm recipes***" and the very "o" in AvoDerm is an illustration of an avocado.

***Figure 1 - AvoDerm Logo***



1

*Figure 2 - Example of AvoDerm Advertising Avocados as a "Key Ingredient"*



2.    In reality, however, AvoDerm contains little to no avocado at all. Despite advertising "avocado" as the primary feature of AvoDerm, Plaintiffs are informed and believe that AvoDerm has negligible amounts of avocado in the product, if any at all.  Plaintiffs are informed and believe that the "avocado" used in AvoDerm products is actually a "powder" that is not pure dried avocado itself. Rather, Plaintiffs are informed and believe that "avocado" powder consists of a very small percentage of dried avocado, if any at all, and that the majority of the "avocado" powder is comprised of several other dried or dehydrated ingredients.[1]

---

[1] Defendants' failure to specify that the avocado used in AvoDerm is "dried" avocado powder is also misleading.  This omission is in stark contrast to other ingredients that Defendants specify are in fact "dried" or "dehydrated" such as "dried tomato pomace."

1
2
***Figure 3 - Examples of Ingredient List Showing "Avocado"
as a Main Ingredient***
3
4



14

3.      In addition, Defendants' claimed "avocado" benefits do not derive from just any avocado – Defendants specifically target the *California* avocado and oil derived from *California* avocados to market and advertise their AvoDerm products.  Defendants claim that their AvoDerm products are "**only** made with the **flesh or oil** of **California avocados**."[2]  (emphasis added).

***Figure 4 - Example from www.avodermnatural.com/why-avocados***



And while avocados are safe for dogs and cats, AvoDerm Natural is only made with the flesh or oil of California avocados so you can feel (extra) safe to provide all the benefits of the avocado super food to your dogs and cats.

_____

[2] *https://www.avodermnatural.com/why-avocados, last visited July 2020*

-3-

*Figure 5 - Example of AvoDerm Packaging Advertising Use of "California" Avocados and Avocado Oil*



4.       Defendants' claims about the origins of the avocados and oil in the product—California—are also false.  Plaintiffs are informed and believe that avocado and avocado oil used in AvoDerm products, if any, are not only sourced from avocados grown and pressed outside of California, but are from avocados grown and pressed *outside the United States*, including in Mexico, among potentially other foreign countries.

5.       Despite these origins, at all times alleged herein, each AvoDerm product package is uniformly labeled with a "Made in the USA" designation. Plaintiffs are informed and believe that AvoDerm's "Made in USA" labeling violates section 17533.7 of the California Business and Professions Code and misrepresents the source and origin of the AvoDerm products because the "avocado" and avocado oil together comprise more than five percent (5%) of the final, wholesale manufactured product of AvoDerm products, but they are in fact derived from avocados grown, dried and/or pressed in Mexico or other foreign countries.[3]

---

[3] To the extent avocado and avocado oil do not even represent more than 5% of the

*Figure 6 - Example of "Made in USA" Packaging Label*



6.    Plaintiffs seek relief for themselves and all others similarly situated to put a stop to Defendants' deceptive marketing and advertising of its AvoDerm products based upon the following:

| Deceptive Marketing Practice | Why it is False and Misleading |
|---|---|
| Avocado is a key/main ingredient | "Avocado" is a powder; dried avocado makes up a small percentage of the powder, if there exists any avocado in the powder at all |
| Avocado and avocado oil are sourced from "California" avocados | Avocados used in AvoDerm, if any, are grown and/or pressed in Mexico or other foreign countries |
| AvoDerm is "Made in the USA" | The "avocado" and avocado oil in AvoDerm are sourced outside the USA |

7.    Plaintiffs bring nine counts against Defendants based upon these deceptive marketing practices: (1) Violation of the Consumer Protection Statutes

---

total wholesale AvoDerm product, then basing the entire AvoDerm product line around avocado and avocado oil is false and misleading on this separate and independent ground. (*See, supra.*)

of the 50 States and the District of Columbia, (2) Violation of the California Consumers Legal Remedies Act ("CLRA") Cal. Civ. Code §§ 1750, *et seq.*, (3) Violation of the California Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (4) False Advertising in Violation of California Bus. & Prof. Code §§ l7500, *et seq.*, (5) Violation of Cal. Bus. & Prof. Code § 17533.7, (6) Violation of the Wash. Rev. Code Ann. §§ 19.86.010, *et seq.* – Unfair Practices, (7) Violation of the Wash. Rev. Code Ann. §§ 19.86.010, *et seq* – Deceptive Practices, (8) Breach of Express Warranty, and (9) Restitution Based on Quasi-Contract and Unjust Enrichment.

## II

## **THE PARTIES**

### ***Plaintiff Aaron Brand***

8.      Plaintiff Aaron Brand is a resident of San Diego County, and over the age of eighteen (18) years.  Mr. Brand has a large-breed dog named Nola.  On or about January 12, 2019, Mr. Brand purchased AvoDerm Natural Adult Chicken Meal & Brown Rice Formula Dry Dog Food – 30 lb. bag, from Amazon.com for approximately $49.99.

9.      In deciding to purchase AvoDerm, Mr. Brand read and relied on Defendants' representations that AvoDerm was "Made in the USA" with avocados grown only in California or made with oil of California avocados.  Before making his purchase, Mr. Brand was also exposed to, read and relied upon the online photographs of the outer packaging of the product, claims made on www.avodermnatural.com, and statements made by Defendants on Amazon, www.amazon.com, that avocado was a main ingredient, the product was "Made in the USA," and that the avocados and avocado oil in AvoDerm used California avocados and avocado oil from California avocados.

10.      Because of his exposure to Defendants' packaging, advertising and marketing regarding these claimed characteristics, Mr. Brand believed that

Defendants' AvoDerm products did in fact contain California avocados and avocado oil from California avocados as a main ingredient in the food and that the AvoDerm products were "Made in the USA" as labeled and advertised in accordance with section 17533.7 of the California Business and Professions Code.

11.    Mr. Brand relied on each of these misrepresentations in making his decision to purchase AvoDerm Dog Food and he would not have purchased Defendants' AvoDerm products if he had known that they did not in fact contain the claimed characteristics as alleged herein.  Mr. Brand was injured in fact and lost money as a result of Defendants' improper conduct.

12.    Alternatively, Mr. Brand would not have paid as much as he did for Defendants' AvoDerm products if he had known they did not in fact contain the claimed characteristics as alleged herein.  Mr. Brand was injured in fact and lost money as a result of Defendants' improper conduct.

13.    Mr. Brand has standing to represent purchasers of all AvoDerm cat and dog food products.  All AvoDerm products at issue in this case are sufficiently similar to the AvoDerm dog food Mr. Brand purchased – each product is food for a dog or cat and all are comprised of similar ingredients.  In addition, Defendants make the same uniform misrepresentations on all AvoDerm cat and dog food products.  All AvoDerm cat and dog food products uniformly suffer from the same misrepresentations regarding avocados as a main ingredient, that the avocado and avocado oil is derived from avocados grown and pressed in California, and that the product is "Made in the USA," when in fact none of these representations are true.

### *Plaintiff John Flodin*

14.    Plaintiff John Flodin is a resident of King County, Washington and over the age of eighteen (18) years.  Mr. Flodin has a golden retriever.  On or about August 28, 2020, Mr. Flodin purchased AvoDerm Natural Puppy Chicken Meal & Brown Rice Formula Dry Dog Food – 4 lb., from Amazon.com for approximately $10.90.

15.    In deciding to purchase AvoDerm, Mr. Flodin read and relied on Defendants' representations that AvoDerm was "Made in the USA" with avocados grown only in California or made with oil of California avocados.  Before making his purchase, Mr. Flodin was exposed to, read and relied upon the online photographs of the outer packaging of the product, claims made on www.avodermnatural.com, and statements made by Defendants on Amazon, www.amazon.com, that avocado was a main ingredient, the product was "Made in the USA," and that the avocados and avocado oil in AvoDerm used California avocados and avocado oil from California avocados.

16.    Because of his exposure to Defendants' packaging, advertising and marketing regarding these claimed characteristics, Mr. Flodin believed that Defendants' AvoDerm products did in fact contain California avocados and avocado oil from California avocados as a main ingredient in the food and that the AvoDerm products were "Made in the USA" as labeled and advertised.

17.    Mr. Flodin relied on each of these misrepresentations in making his decision to purchase AvoDerm Dog Food and he would not have purchased Defendants' AvoDerm products if he had known that they did not in fact contain the claimed characteristics as alleged herein.  Mr. Flodin was injured in fact and lost money as a result of Defendants' improper conduct.

18.    Alternatively, Mr. Flodin would not have paid as much as he did for Defendants' AvoDerm products if he had known they did not in fact contain the claimed characteristics as alleged herein.  Mr. Flodin was injured in fact and lost money as a result of Defendants' improper conduct.

19.    Mr. Flodin has standing to represent purchasers of all AvoDerm cat and dog food products.  All AvoDerm products at issue in this case are sufficiently similar to the AvoDerm dog food Mr. Flodin purchased – each product is food for a dog or cat and all are comprised of similar ingredients.  In addition, Defendants make the same uniform misrepresentations on all AvoDerm cat and dog food

-8-

products.  All AvoDerm cat and dog food products uniformly suffer from the same misrepresentations regarding avocados as a main ingredient, that the avocado and avocado oil is derived from avocados grown and pressed in California, and that the product is "Made in the USA," when in fact none of these representations are true.

### Defendant Central Garden & Pet Company

20.     Plaintiffs are informed and, on that basis, believe that Defendant Central Garden & Pet Company is a publicly traded corporation (NADAQ: CENT) established under the laws of Delaware, with its principal place of business located in Walnut Creek, California.  Defendant Central Garden & Pet Company is a distribution company for leading brands in the pet supply and garden and lawn supply industries.[4]  With its branded, private label and distribution businesses, Central Garden & Pet has over $1.8 billion in annual sales.[5]

### Defendant Breeder's Choice Pet Food, Inc.

21.     Plaintiffs are informed and, on that basis, believe that Defendant Breeder's Choice Pet Foods, Inc. ("Breeder's Choice") is a wholly-owned division of Central Garden & Pet Company.[6]  Breeder's Choice is "regarded by the industry as one of the purest, premium makers of natural pet foods for dogs and cats."[7]

22.     Breeder's Choice initially gained recognition among mainstream consumers in 1947 when it introduced the novelty of frozen pet meals.[8]  In 1960, the line expanded to include the company's first oven-baked kibble and biscuits, which exceeded the minimum pet food nutritional requirements in an effort to be the most nutritious products available.[9]  But it was "the avocado that put the company on the map."[10]

---

[4] *https://www.central.com/about-us/who-we-are*
[5] *Id.*
[6] *https://chamberorganizer.com/irwindalechamber/mem_611169537*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

23.    Breeder's Choice launched its AvoDerm Natural dog and cat food in 1982 and it "quickly became the company's and one of the industry's best-selling products."[11]

24.    Plaintiffs are not aware of the true names and identities of the fictitiously named Doe defendants.  Plaintiffs are informed and believe, and on that basis alleges, that each Doe defendant was responsible in some manner for the acts alleged herein, and/or is a necessary party who will be named when its true identity is discovered so that the Court may grant complete relief to Plaintiffs and members of the Class.  "Defendants" collectively includes and refers to any and all "Doe" Defendants.

### III

### JURISDICTION AND VENUE

25.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

26.    Jurisdiction is also proper under Business & Professions Code section 17203 of the Unfair Competition Law ("UCL"), as such claims can be brought in any court of competent jurisdiction.

27.    Jurisdiction over Defendants is also proper because they are either corporations or associations organized and existing with their principal or primary places of business located within the District of this Court in the State of California, are residents of this State and/or have purposely availed themselves of the privilege of conducting business activities in California because they currently maintain systematic and continuous business contacts with this State, and/or are

---

[11] *Id.*

licensed to do business in this State.

28.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and engage in continuous and systematic business activities within the State of California.  Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

# IV

## GENERAL ALLEGATIONS

### *Benefit of Avocados as a Main Ingredient*

29.    Avocados are regarded as a "super food" – a food that is naturally nutrient-dense.  Avocados contain nearly 20 vitamins and minerals and are rich in potassium, folate, vitamins A, C, E, and B, and riboflavin.[12]  Avocados are also comprised of 18 amino acids making it a complete protein source and contain a healthy level of monounsaturated fat and omega fatty acids.[13]

30.    The health benefits of the avocado for humans have become increasingly popular over the years.  Consumer desire for this "superfood" extends to their pets as well.  This can be attributed to the "pet food humanization" trend.  The pet food humanization trend is the result of people recognizing their pets as a true member of the family and "translates into pet owners wanting the same quality and safety standards on pet food as their own food."

31.    As described above, everything about Defendants' AvoDerm product is about the avocado.  "AvoDerm" has avocado as part of its name, the "o" in AvoDerm is a picture of an avocado, Defendants' color scheme for its products are green to resemble the avocado, and the benefits of avocado for the pet's hair and skin is key marketing message throughout Defendants' advertising of the products.

32.    Defendants' marketing misled Plaintiffs, and misleads the reasonable

---

[12] *https://www.avodermnatural.com/why-avocados#Nutrient*
[13] *Id.*

consumer, to believe that avocado is a main ingredient in the AvoDerm product, thus inducing consumers, as it did Plaintiffs, to purchase AvoDerm products and/or pay more for the product than they would without this representation.  Plaintiffs are informed and believe that this claim is false.  Plaintiffs are informed and believe that the "avocado" in AvoDerm products is actually a powder that contains very little dried avocado in it, if any at all.

### ***Defendants' Representations that AvoDerm uses only "California" Avocado and Avocado Oil is Material to the Reasonable Consumer***

33.    California avocados have superior qualities to avocados grown outside of the State, and avocados grown outside the United States.

34.    California-grown avocados are local and fresh.  California avocados are grown within the United States and can go straight from tree to consumption or tree to product within just a few days.

35.    California avocados are grown in a premium climate with rich, fertile soil not found in other states or countries.[14]  Indeed, less than 1 percent of the state is suitable for growing them.[15]  California avocados are grown in the richest soil and sublime weather conditions that fosters the highest quality fruit.[16]

36.    California avocados are grown under greater regulations, use lower levels of pesticides and preservatives, and have stronger quality control, among other benefits that are not found in avocados grown outside of the State or in fruit grown outside of the U.S.A.  California avocado farmers rely on Integrated Pest Management (IPM) to combat pests and diseases.[17]  As a result, California avocados rank among the lowest for pesticide use.[18]  If treatment for pests is necessary in California avocado orchards, the softest chemicals are selected to

---

[14] *https://www.californiaavocado.com/avocado101/the-california-difference*
[15] *Id.*
[16] *Id.*
[17] *https://www.californiaavocado.com/avocado101/the-california-difference/fun-avocado-facts*
[18] *Id.*

-12-

have the least impact on the environment and on beneficial organisms in the orchard.[19]  Indeed, Defendants have recognized these benefits to California-grown avocados compared to foreign-grown avocados and targets its consumers with this very point.

**Figure 7 – Excerpt from avodermnatural.com[20] distinguishing California avocados in AvoDerm dog food versus foreign avocados**

1. Check the label: Some Guatemalan varieties of avocado have higher toxicity levels than the Californian avocados in AvoDerm dog food.

37.    Furthermore, in recent years, consumers have been exposed to the corruption, waste and dangers involved in the avocado industry in foreign countries, making the preference for California and USA-grown avocados greater.[21]

38.    For these reasons, among others, consumer trends have shown that United States consumers prefer locally grown produce believing they are of a higher quality, have greater regulation, and taste better.[22]   This preference extends to the avocado market and supports consumer preference for California avocados over avocados grown outside of the State or outside the country.[23]

39.    Because of these premium qualities, California avocados are sold at a

---

[19] *See id.*
[20] *https://avodermnatural.com/blog/can-dogs-eat-avocado/, last visited March 2, 2021*
[21] *See, e.g., https://www.netflix.com/title/80146284* (Netflix documentary "Rotten")
[22] *See, e.g., https://www.freshplaza.com/article/9197569/california-avocados-expected-to-hit-peak-between-april-and-july/; see also* Chambers, Stephanie, Alexandra Lobba, Laurie Butler, Kate Harvey, W. Bruce Trailla. "Local, national and imported foods: A qualitative study." Appetite 49.0 (2007): 208-213 (Web. 11 Nov. 2014) (local foods perceived as a higher quality and considered to taste better).
[23] *See id.*

higher price to retailers and the food industry and consumers are willing to pay more for California avocados as well.[24]

**Figure 8 - Daily Market Price Premium of California vs. Mexican Avocados[25]**

|  | | | MOSTLY | | | | |
|---|---|---|---|---|---|---|
|  | LOW | HIGH | AVERAGE | LOW | HIGH | AVERAGE |

**AVOCADOS - MEXICO CROSSINGS THROUGH TEXAS**
Demand: 32-48S VERY LIGHT, 60S-82S FAIRLY LIGHT. Market: ABOUT STEADY. Comment: Prices represent few open market spot sales. Extra services included.

|  | LOW | HIGH | AVERAGE | LOW | HIGH | AVERAGE |
|---|---|---|---|---|---|---|
| HASS * 32S * cartons 2 layer | 42.25 | 44.25 | 43.25 | 39.25 | 46.25 | 42.75 |
| HASS * 36S * cartons 2 layer | 42.25 | 44.25 | 43.25 | 39.25 | 46.25 | 42.75 |
| HASS * 40S * cartons 2 layer | 40.25 | 42.25 | 41.25 | 38.25 | 46.25 | 42.25 |
| HASS * 48S * cartons 2 layer | 40.25 | 42.25 | 41.25 | 38.25 | 46.25 | 42.25 |
| HASS * 60S * cartons 2 layer | 34.25 | 36.25 | 35.25 | 34.25 | 38.25 | 36.25 |
| HASS * 70S * cartons 2 layer | 28.25 | 30.25 | 29.25 | 26.25 | 34.25 | 30.25 |
| HASS * 84S * cartons 2 layer | 18.25 | 20.25 | 19.25 | 18.25 | 21.25 | 19.75 |

**AVOCADOS - SOUTH DISTRICT CALIFORNIA**
Demand: VERY LIGHT. Market: STEADY. Comment: Prices represent few open market sales. Extra services included. Wide range in prices.

|  | LOW | HIGH | AVERAGE | LOW | HIGH | AVERAGE |
|---|---|---|---|---|---|---|
| HASS * 32S * cartons 2 layer | 49.25 | 50.25 | 49.75 | 48.25 | 54.25 | 51.25 |
| HASS * 36S * cartons 2 layer | 49.25 | 50.25 | 49.75 | 48.25 | 54.25 | 51.25 |
| HASS * 40S * cartons 2 layer | 48.25 | 50.25 | 49.25 | 48.25 | 53.25 | 50.75 |
| HASS * 48S * cartons 2 layer | 45.25 | 48.25 | 46.75 | 45.25 | 53.25 | 49.25 |
| HASS * 60S * cartons 2 layer | 42.25 | 44.25 | 43.25 | 38.25 | 45.25 | 41.75 |

40.     The California Avocado Commission recognizes these premium attributes of California avocados and is entirely created and devoted to differentiating and build the "California Avocado" brand to ensure "'Premium' positioning, supported by consistently high-quality production that is delivered to consumers soon after harvest."[26]

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[24] *See, e.g.,* Nganje, William E., Renée Shaw Hughner, Nicholas E. Lee. "State-Branded Programs and Consumer Preference for Locally Grown Produce." Agricultural and Resource Economics Review 40.1 (2011): 20-32. Northeastern Agricultural and Resource Economics Association. Web. 11 Nov. 2014.
[25] *www.agplus.net*
[26] *https://www.californiaavocadogrowers.com/commission/presidents-message*

-14-

1

2

3

4

5

6

7

8

9

10

**Figure 9 - Photograph of California Avocado Commission Marketing**



11

12

13

14

41.     Defendants have capitalized on these consumer preferences and claim *both* that AvoDerm uses *only* the flesh of California avocados *AND* oil from California avocados in their dog and cat food.  Plaintiffs are informed and believe that these claims are false.

15

16

### ***There is Insufficient Supply of California Avocados in Large Quantities for Use in the Pet Food Industry***

17

18

19

20

42.     There is a limited supply of California avocados.  The total acreage of bearing California avocados is only about 50,000 acres across the State.[27]  This is small – the California avocado market yields only approximately 4% of the global avocado production.

21

22

23

24

25

26

43.     In addition, there is no consistent, year-round supply of California avocados.  The California avocado harvest season lasts only eight months from approximately February through September, with drastically decreased yields in the shoulder months.  During the off-season months from about October through January, there is virtually no supply of California avocados.  To fulfill the demand for a year-round supply, the industry relies on imports, largely from Mexico and

27

28

[27] *See https://www.californiaavocadogrowers.com/industry/industry-statistical-data*

CLASS ACTION COMPLAINT

Peru, and other foreign countries.

### Figure 10 - Yield Chart Showing Nearly NO Volume of California Avocados from September through January



44.    Because of the premium quality of California avocados, California avocados are highly sought after by the top food service and retail giants for premium human food consumption in the United States.

45.    Moreover, a high proportion of California avocados is shipped directly to Asia and Korea for human consumption.  Other countries, such as Mexico, charge a special tax on exporting avocados to some Asian countries, causing these countries to place a high demand on California avocados that are not subject to this levy.  This leaves a severely limited supply of California avocados to process for cat and dog food at an impractically high price for the pet industry.

46.    Furthermore, Plaintiffs have confirmed with the California avocado packers[28] that make up a super majority of the California avocado packing and

---

[28] *https://www.californiaavocadogrowers.com/industry/packers-and-handlers*

distribution market that they do not, and have not, sold or supplied Defendants with California avocados within the last 15 years.

47.    While the California avocado market for *fresh* avocados is limited, the market for *dried* avocado powder made from California avocados is even more so. In fact, Plaintiffs are informed and believe that avocado powder made from California avocados does not exist, and avocado powder is only produced in large quantities in Mexico, New Zealand and other foreign countries outside of the United States that use non-California grown avocados.

### *Oil from California Avocados is Only of the Highest and Most Expensive Extra-Virgin Quality Making it Entirely Impractical for Use in the Pet Food Industry*

48.    There are varying qualities of avocado oil that are largely classified by the method of extraction from the fruit.  "Extra virgin" is the highest quality oil. Extra virgin avocado oil is produced from high-quality fruit, extracted only with mechanical methods, using a temperature below 50 °C and without the use of chemical solvents.[29]  "Refined" avocado oil is extracted and then bleached and deodorized, sometimes infused with the natural flavor of herbs or fruits.[30]  Because extra virgin avocado oil is not subjected to high levels of heat or bleaching, it retains higher levels of nutrients and is a superior quality than a refined oil.  For those reasons, extra virgin avocado oil is the most expensive.

49.    Plaintiffs are informed, and on that basis believe, that there are only two manufacturers of avocado oil that produce oil from California avocados.  Both of these manufacturers only produce large volumes of extra virgin quality from California avocados.  No large volumes of refined oil exists from California avocados.  Thus, all avocado oil of refined quality comes from non-California (and more likely non-USA) avocados.

50.    Plaintiffs have confirmed that neither of the two manufacturers of

---

[29] *https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6600360/*
[30] *Id.*

avocado oil from California avocados supply avocado oil to Defendants.  And this makes perfect sense.  Because there is a limited supply of California avocados, there is even a more limited supply of avocado oil derived from California avocados.  Any avocado oil that is made from California avocados, is of the highest "extra virgin" quality.  Extra virgin avocado oil is in high demand by companies that bottle, label and sell the oil at a premium price to consumers and retailers for use of cooking oil or salad dressings for human consumption.  There is no space in the market to sell Defendants this limited supply of high-quality, extra virgin avocado oil sold at a premium price for use in pet products.[31]

51.    Despite these limitations and impracticalities in the California avocado and California avocado oil industry for pet food, Defendants' key marketing platform across the entirety of the AvoDerm dog and cat food product line at all relevant times alleged herein is based off of the "California avocado" and oil derived from "California avocados."  The following are examples of claims AvoDerm makes and had made at relevant times during the class period on the AvoDerm packaging and through marketing, among several others, relating to California avocados:

- "We use nutrient dense **California avocados and avocado oil** to help promote good health and a healthy skin and coat that shows from the inside out."

- "And while avocados are safe for dogs and cats, AvoDerm Natural is **only made with the flesh or oil of California avocados** so you can feel (extra) safe to provide all the benefits of the avocado super food to your dogs and cats."

---

[31] If Defendants are not purchasing avocado oil not from the two California avocado oil suppliers directly, it is similarly unlikely that Defendants purchase extra virgin avocado oil through brokers.  Purchasing the oil through a broker would increase the cost even more, and adds to its impracticability for the pet food industry, even if Defendants could overcome the supply issues.

- "**California avocados** are a key ingredient in AvoDerm recipes because they're packed with a lot of nutrients that your pet needs – all in one amazing superfood."

- "AvoDerm Natural uses carefully selected suppliers of **natural avocados grown in California**."

- "AvoDerm Natural Adult Chicken Meal & Brown Rice Formula dog food provides healthy, balanced nutrition for your dog by using high quality ingredients, such as **natural California avocados**, to ensure that you are providing the optimum nutrition your pet needs."

- "AvoDerm Grain Free Beef & Vegetables Recipe dog food provides healthy, balanced nutrition for your dog with high quality ingredients including natural **California avocados** to ensure that you are providing the optimum nutrition your dog needs."

- "We use **California avocados and avocado oil** which have nearly 20 vitamins, minerals and phytonutrients, to help promote good healthy and a healthy skin and coat that shows from the inside out."

- "With natural **California avocados**, your dog will get close to 20 vitamins for a healthy skin and coat."

- "Using high quality ingredients including natural **California avocados**, this avocado cat food will satisfy even the finicky cat."

- "Premium protein sources and high quality ingredients including natural **California avocados** ensure your cat gets healthy and balanced nutrition."

- "AvoDerm Natural Chicken Formula kitten and adult wet cat food is made with premium chicken protein as the first ingredient and uses high quality ingredients including natural **California avocados** to provide healthy balanced nutrition for your cat."

52.     Thus, the avocados and avocado oil used in AvoDerm products is sourced from avocados from outside of the United States, including from places

-19-

like Mexico or other foreign countries.[32]  Claims by Defendants that their AvoDerm products are "Made in the USA" and contain California avocados and avocado oil from California avocados are false and therefore misleads consumers into believing that AvoDerm products have a different source, geographic origin, characteristic, and qualities that the AvoDerm products do not have.

53.    Defendants' claims that AvoDerm products contain avocado as a main ingredient, are "Made in the USA," and use California avocados and avocado oil from California avocados are material representations because consumers, including Plaintiffs, attach importance to these claims when making purchase decisions for their pet's food.  Plaintiffs and the reasonable consumer purchased AvoDerm because avocado and avocado oil were a main ingredient.  Plaintiffs and the reasonable consumer relied on the geographical representations Defendants made to ensure the highest level of quality, safety and optimal nutrition for their pets.  Plaintiffs and the reasonable consumer believe that California-grown avocados are superior to avocados grown outside of the state or country because they are local and fresh, are grown in a unique climate with rich, fertile soil not found in other states or countries, provide the highest quality of fruit and deliver the most nutrients, are grown with greater regulations, use different and safer pesticides and preservatives, are grown under conditions with stronger quality control, among other important distinguishing benefits.

54.    Defendants market and advertise AvoDerm products with these claims regarding the avocado and geographical origin in order to differentiate the products, increase sales and induce consumers to purchase its AvoDerm products for their pets.  Plaintiffs and members of the Class were among the intended recipients of Defendants' deceptive claims.  Plaintiffs and members of the Class reasonably relied to their detriment on Defendants' misleading representations.

---

[32] *https://www.californiaavocadogrowers.com/industry/market-statistics*

1    55.    Defendants' false, misleading and deceptive misrepresentations are

2  likely to continue to deceive and mislead reasonable consumers and the general

3  public, as they have already deceived and misled Plaintiffs and members of the

4  Class.

5    56.    As a result of Defendants' false, misleading and deceptive

6  representations about use of avocados as a main ingredient in the product, use of

7  avocado and avocado oil from California avocados in their AvoDerm products, and

8  false claims that the products are "Made in the USA," Defendants injured Plaintiffs

9  and members of the putative class ("Class"), in that Plaintiffs and members of the

10  Class:

11        a.  Paid a sum of money for AvoDerm products that did not have the

12            characteristics, qualities, or geographic origin that Defendants

13            represented and promised they had;

14        b.  Were deprived of the benefit of the bargain because the AvoDerm

15            products they purchased were different from what Defendants

16            warranted;

17        c.  Were deprived of the benefit of the bargain because the AvoDerm

18            products they purchased had less value than what Defendants

19            represented; and

20        d.  Were denied the benefit of truthful product labels.

21    57.    Plaintiffs and members of the Class would not have purchased the

22  AvoDerm dog and cat food if they had known that the products did not contain the

23  characteristics, quality and geographic origin Defendants represented them to have.

24    58.    Alternatively, Plaintiffs and members of the Class would not have

25  purchased AvoDerm dog and cat food at the price paid had they known the

26  AvoDerm products did not contain the characteristics, quality and geographic

27  origin Defendants represented them to have.

28    59.    Had Defendants not made the false, misleading, and deceptive

-21-

representations about the AvoDerm products, Plaintiffs and members of the Class would not have been economically injured.

60.    Accordingly, Plaintiffs and members of the Class have suffered injury in fact, lost money or property, and suffered economic damages as a result of Defendants' wrongful conduct.

**V**

**CLASS ALLEGATIONS**

61.    Plaintiffs bring this action as a class action on behalf of the following Nationwide Class, or, in the alternative Multi-State Classes:

**Nationwide Class**

All citizens of the United States who purchased Defendants' AvoDerm dog and cat food products for personal use until the date the notice is disseminated.

**Multi-State Class**

All persons in California and Washington and other states with similar laws[33] who purchased Defendants' AvoDerm dog and cat food products for personal use until the date notice is disseminated.

62.    In the alternative, Plaintiffs bring this action on behalf of themselves and all other similarly situated California consumers pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following California Class:

**California Subclass**

All persons in California who purchased Defendants' AvoDerm dog and cat food products for personal use until the date the notice is disseminated.

---

33 For purposes of a multi-state Class, Plaintiffs preliminarily avers other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Florida (Fla. Stat. §§ 501.201, et seq.); Illinois (815 Ill. Comp. Stat. Ann. §§ 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §§ 445.901, et seq.); Minnesota (Minn. Stat. §§ 325F.67, et seq.); Missouri (Mo. Rev. Stat. §§ 407.010, et seq.); New Jersey (N.J. Stat. §§ 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349, et seq.; and Washington (Wash. Rev. Code §§ 19.86.010, et seq.) (collectively, the "Multi-State Class States").

**Washington Subclass**

All persons in Washington who purchased Defendants' AvoDerm dog and cat food products for personal use until the date the notice is disseminated.

63.    Excluded from the Class are: (i) Defendants and their officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

64.    Plaintiffs reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

65.    This action is properly maintainable as a class action for the reasons set forth below.

66.    **Numerosity**—Plaintiffs are informed and believe, and on that basis allege, that members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of thousands of purchasers dispersed throughout the United States, and the California and Washington Subclasses likewise consists of tens or hundreds of thousands of purchasers throughout these respective States. Accordingly, it would be impracticable to join all members of the Class before the Court.

67.    **Commonality and Predominance**—There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

      a.    Whether Defendants made material representations and omissions in the packaging, marketing and sale of AvoDerm products;

      b.    Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling AvoDerm products;

-23-

c. Whether Defendants violated Consumer Protection Statutes, California Bus. & Prof. Code §§ 17200, *et seq.*, and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

d. Whether Defendants committed a breach of express warranty;

e. Whether Plaintiffs and the Class members are entitled to equitable and/or injunctive relief;

f. Whether Plaintiffs and the Class members have sustained damage as a result of Defendants' unlawful conduct; and

g. The proper measure of damages sustained by Plaintiffs and Class members.

68. **Typicality—**Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent. Defendants made the misrepresentations at issue uniformly across all AvoDerm cat and dog food products. Plaintiffs and the Class members were exposed to the same misrepresentations. These misrepresentations were material and Plaintiffs, like the Class members, purchased AvoDerm products because of Defendants' falsely packaged, labeled and advertised AvoDerm products. Thus, Plaintiffs' claims arise from the same events, practices, and/or course of conduct that gives rise to the claims of the other Class members. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class members sustained similar injuries arising out of Defendants' conduct. Plaintiffs' and the Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

69. **Adequacy of Representation—** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the members of the Class that they seek to represent. Plaintiffs will fairly and adequately protect the interests of members of the Class

-24-

and has retained counsel experienced and competent in the prosecution of complex cases including complex class action questions that arise in consumer protection litigation.

70.    **Superiority**—A class action is superior to other available methods for the fair and efficient adjudication of the present controversy because it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, are far superior than any difficulties that might be argued with regard to the management of this class action.  This superiority makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

71.    Because Plaintiffs seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

72.    The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

73.    The prerequisites to maintaining a class action are met as questions of law or fact common to Class members predominate over any questions affecting

only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CAUSES OF ACTION

### COUNT I

**Violation of the Consumer Protection Acts of 50 States and the District of Columbia on behalf of the Nationwide Class**

74.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

75.    Plaintiffs bring this claim on behalf of the nationwide class and seek redress for violations of the consumer protection acts of each of the States of the United States, and the District of Columbia.

76.    Plaintiffs bring these statutory consumer protection claims pursuant to the "Consumer Protection Acts" identified below, all of which were enacted and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices.

77.    The following consumer protection acts are collectively referred to herein as the "Consumer Protection Acts":

  a.    ALA. CODE § 8-19-1 et seq. (Alabama);

  b.    ALASKA STAT. ANN. § 45.50.471 et seq. (Alaska);

  c.    ARIZ. REV. STAT. ANN. § 44-1521 et seq. (Arizona);

  d.    ARK. CODE ANN. § 4-88-101 et seq. (Arkansas);

  e.    CAL. BUS. & PROF. CODE § 17200 et seq. and CAL. CIV. CODE §1750 et seq. (California);

  f.    COLO. REV. STAT. ANN. § 6-1-101 et seq. (Colorado);

  g.    CONN. GEN. STAT. ANN. § 42-110a et seq. (Connecticut);

  h.    DEL. CODE ANN. tit. 6, § 2511 et seq. (Delaware);

  i.    D.C. CODE ANN. § 28-3901 et seq. (District of Columbia);

  j.    FLA. STAT. ANN. § 501.201 et seq. (Florida);

1        k.      GA. CODE ANN. § 10-1-370 et seq. and GA. CODE ANN. §

2                   10-1-390 et seq. (Georgia);

3        l.       HAW. REV. STAT. ANN. § 480-1 et seq. and HAW. REV.

4                   STAT. ANN. § 481A-1 et seq. (Hawai'i);

5        m.     IDAHO CODE ANN. § 48-601 et seq. (Idaho);

6        n.      815 ILCS 505/1 et seq. (Illinois);

7        o.      IND. CODE ANN. § 24-5-0.5-0.1 et seq. (Indiana);

8        p.      IOWA CODE § 714.16 et seq.

9        q.      KAN. STAT. ANN. § 50-623 et seq. (Kansas);

10       r.      KY. REV. STAT. ANN. § 367.110 et seq. (Kentucky);

11       s.      LA. STAT. ANN. § 51:1401 et seq. (Louisiana);

12       t.      ME. REV. STAT. tit. 5, § 205-A et seq. (Maine);

13       u.     MD. CODE ANN., COM. LAW § 13-101 et seq. (Maryland);

14       v.      MASS. GEN. LAWS ANN. ch. 93A, § 1 et seq.

15                 (Massachusetts);

16       w.    MICH. COMP. LAWS ANN. § 445.901 et seq. (Michigan);

17       x.      MINN. STAT. ANN. § 325F.68 et seq., MINN. STAT. ANN. §

18                325D.09 et seq., MINN. STAT. ANN. § 325D. 43 et seq., and

19                MINN. STAT. ANN. § 325F.67 (Minnesota);

20       y.      MISS. CODE ANN. § 75-24-1 et seq. (Mississippi);

21       z.      MO. ANN. STAT. § 407.010 et seq. (Missouri);

22       aa.    MONT. CODE ANN. § 30-14-101 et seq. (Montana);

23       bb.    NEB. REV. STAT. ANN. § 59-1601 et seq. (Nebraska);

24       cc.    NEV. REV. STAT. ANN. § 41.600 and NEV. REV. STAT.

25               ANN. §598.0903 et seq. (Nevada);

26       dd.    N.H. REV. STAT. ANN. § 358-A:1 et seq. (New Hampshire);

27       ee.    N.J. STAT. ANN. § 56:8-1 et seq. (New Jersey);

28       ff.     N.M. STAT. ANN. § 57-12-1 et seq. (New Mexico);

gg.   N.Y. GEN. BUS. LAW. § 349 et seq. (New York);

hh.   N.C. GEN. STAT. ANN. § 75-1 et seq. (North Carolina);

ii.   N.D. CENT. CODE ANN. § 51-15-01 et seq. (North Dakota);

jj.   OHIO REV. CODE ANN. § 1345.01 et seq. (Ohio);

kk.   OKLA. STAT. ANN. tit. 15, § 751 et seq. (Oklahoma);

ll.   OR. REV. STAT. ANN. § 646.605 et seq. (Oregon);

mm.   73 PA. STAT. ANN. § 201-1 et seq. (Pennsylvania);

nn.   6 R.I. GEN. LAWS ANN. § 6-13.1-1 et seq. (Rhode Island);

oo.   S.C. CODE ANN. § 39-5-10 et seq. (South Carolina);

pp.   S.D. CODIFIED LAWS § 37-24-1 et seq. (South Dakota);

qq.   TENN. CODE ANN. § 47-18-101 et seq. (Tennessee);

rr.   TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Texas);

ss.   UTAH CODE ANN. § 13-11-1 et seq. (Utah);

tt.   VT. STAT. ANN. tit. 9, § 2451 et seq. (Vermont);

uu.   VA. CODE ANN. § 59.1-196 et seq. (Virginia);

vv.   WASH. REV. CODE ANN. § 19.86.010 et seq. (Washington);

ww.   W.VA. CODE ANN. § 46A-6-101 et seq. (West Virginia);

xx.   WIS. STAT. ANN. § 100.20 (Wisconsin); and

yy.   WYO. STAT. ANN. § 40-12-101 et seq. (Wyoming).

78.   Plaintiffs and the Class members have standing to assert claims under the Consumer Protection Acts because they are consumers within the meaning of the Consumer Protection Acts and Defendants' practices were addressed to the market generally and otherwise implicate consumer protection concerns.

79.   Defendants have engaged in unfair, unlawful and deceptive trade practices by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint.

80.   Defendants intended that Plaintiffs and the Class members would rely on the unlawful, fraudulent, and/or unfair business acts and practices alleged

herein.  In the alternative, Defendants knew or should have known that the AvoDerm products did not contain the claimed characteristics because Defendants manufactured, marketed and sold the AvoDerm products without those claimed characteristics.  Defendants knew or should have known that their representations about the AvoDerm products as described herein violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and the members of the Class.

81.   Plaintiffs and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices.  Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) Defendants' AvoDerm products.

82.   Defendants' acts and omissions are likely to deceive the general public.

83.   Defendants' actions, which were willful and wanton, constitute intentional violations of the Consumer Protection Acts.

84.   The aforementioned practices, which Defendants have used to their significant financial gain, constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

85.   Plaintiffs seek, on behalf of those similarly situated, full damages, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.  Plaintiffs also seek to recover attorneys' fees, costs, and expenses to be assessed against Defendants, within the limits set forth by applicable law.

86.   Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.

87.     Plaintiffs and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate Consumer Protection Acts, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants is not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the Consumer Protection Acts alleged to have been violated herein.

88.     As a direct and proximate result of such actions, Plaintiffs and the other members of the Classes have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the Class lost the amount they paid for the AvoDerm products.

89.     As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

/ / /

/ / /

/ / /

**COUNT II**

**Violation of the California Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750, *et seq.* on behalf of the California Subclass**

90.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth verbatim herein.

91.    Plaintiff Aaron Brand brings this claim under the Consumer Legal Rights Act, Civil Code section 1750, *et seq.*, (the "CLRA"), on behalf of himself individually and the Class against Defendants.

92.    At all times relevant hereto, Plaintiff and members of the Class were "consumer[s]," as defined in Civil Code section 1761(d).

93.    At all times relevant hereto, Defendants constituted a "person," as defined in Civil Code section 1761(c).

94.    At all times relevant hereto, the AvoDerm cat and dog food manufactured, marketed, advertised, and sold by Defendants constituted "goods," as defined in Civil Code section 1761(a).

95.    The purchases of the AvoDerm cat and dog by Plaintiff and members of the Class were and are "transactions" within the meaning of Civil Code section 1761(e).

96.    Defendants disseminated, or caused to be disseminated, through its packaging, labeling, marketing and advertising misrepresentations that avocado is a main ingredient in AvoDerm products, that AvoDerm products use California avocados and oil from California avocados when they do not and that AvoDerm products are "Made in the USA" when, in fact, avocado and avocado oil used in AvoDerm cat and dog food make up more than 5% of the final wholesale value of the product and are sourced and produced outside of the United States.

97.    Defendants' representations violate the CLRA in at least the following respects:

a.    In violation of Civil Code § 1770(a)(2), Defendants misrepresented the source of AvoDerm products;

b.    In violation of Civil Code § 1770(a)(4), Defendants used deceptive representations and designations of geographic origin in connection with goods or services;

c.    In violation of Civil Code § 1770(a)(5), Defendants misrepresented that the AvoDerm products have characteristics and benefits which they do not have;

d.    In violation of Civil Code § 1770(a)(7), Defendants misrepresented that AvoDerm products are of a particular quality which they are not;

e.    In violation of Civil Code § 1770(a)(9), Defendants advertised the AvoDerm products with an intent not to sell the products as advertised; and

f.    In violation of Civil Code § 1770(a)(16), Defendants misrepresented that the subject of the sale of AvoDerm products has been supplied in accordance with a previous representation when it has not.

98.    Defendants knew or should have known that the AvoDerm products did not contain the claimed characteristics because Defendants manufactured, marketed and sold the AvoDerm products without those claimed characteristics. Defendants knew or should have known that their representations about the AvoDerm products as described herein violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and the members of the Class.

99.    Defendants' actions as described herein were done with conscious disregard of Plaintiffs' and the Class's rights and were wanton and malicious.

100.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants are still

representing that the AvoDerm products have characteristics which they do not have.

101.   Pursuant to Civil Code section 1782(d), Plaintiffs and members of the Class seek an order enjoining Defendants from engaging in the methods, acts, and practices alleged herein, and for restitution and disgorgement.

102.   Pursuant to Civil Code section 1782, Plaintiffs notified Defendants in writing by certified mail of the alleged violations of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.  A copy of the written notice provided to Defendants is attached hereto as **Exhibit A.**

103.   With respect to those violations of Civil Code § 1770 as to which notification was received and accepted by Defendants, Defendants failed to respond to Plaintiffs' timely demands within 30 days of Plaintiffs' notice. Accordingly, Plaintiffs hereby requests damages from Defendants as provided for in Civil Code § 1780 including:

    a.  actual damages in excess of the jurisdictional limits of this Court;

    b.  statutory damages allowable under Civil Code § 1780;

    c.  punitive damages;

    d.  attorneys' fees;

    e.  court costs and interest; and

    f.  any other relied which the court deems proper.

104.   Pursuant to § 1780(d) of the CLRA, attached as **Exhibit B** is an affidavit showing that this action was commenced in a proper forum.

## COUNT III

### Violation of the California Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §§ 17200, *et seq.* on behalf of the California Subclass

105.   Plaintiffs reallege and incorporates by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

-33-

106.   Plaintiff Aaron Brand brings this claim under California's Unfair Competition Law, Business and Professions Code section 17200, *et seq.* ("UCL"), on behalf of himself and the Class against Defendants.  The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.

107.   Defendants committed unlawful business acts or practices by, among other things, making the representations (which also constitutes advertising within the meaning of § 17200), as set forth more fully herein, and violating Civil Code sections 1572, 1573, 1709, 1711, 1770, Business & Professions Code sections 17500, *et seq.* and 17533.7, FTC Act, including 15 U.S.C. §§ 45 and 45a, and the common law.  Plaintiffs, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

108.   Defendants committed "unfair" business acts or practices by, among other things: (1) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and members of the Class; and (3) engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Class Action Complaint.  There is no societal benefit from false advertising, only harm.  Plaintiffs and the other Class members paid for a product that is not as advertised by Defendants.  While Plaintiffs and the other Class members were harmed, Defendants were unjustly enriched by its false misrepresentations.  As a result, Defendants' conduct is "unfair," as it offended an established public policy.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

/ / /

109.   Defendants committed "fraudulent" business acts or practices by making the representations of material fact regarding the AvoDerm products as set forth fully herein.  Defendants' business practices as alleged herein are "fraudulent" under the UCL because they are likely to deceive customers into believing the AvoDerm products contain the characteristics, qualities and quantities asserted in the Claims alleged herein even though they do not.

110.   Plaintiffs and the other members of the Class have in fact been deceived as a result of their reliance on Defendants' material representations, which are described above.  This reliance has caused harm to Plaintiffs and the members of the Class, each of whom purchased Defendants' AvoDerm products. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of purchasing the AvoDerm products and Defendants' unlawful, unfair, and fraudulent practices.

111.   Defendants' wrongful business practices and violations of the UCL are ongoing.

112.   Pursuant to Business & Professions Code section 17203, Plaintiffs, individually and on behalf of the Class, seeks an order of this Court enjoining Defendants from engaging in the unfair competition alleged herein in connection with the sale of its AvoDerm products.  Additionally, Plaintiffs requests an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendants by means of the unfair competition alleged herein.

113.   Plaintiffs and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct.  The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class are entitled to interest in an amount according to proof.

114.   Plaintiffs requests all applicable remedies, awards, damages, and relief allowable under the UCL.

**COUNT IV**

**False Advertising in Violation of California Bus. & Prof. Code §§ l7500, *et seq.***
**on behalf of the California Subclass**

115.  Plaintiffs reallege and incorporates by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

116.  Defendants use advertising to sell AvoDerm products.  Defendants disseminate advertising concerning the AvoDerm products which by their very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§ 17500 *et seq.* because those advertising statements are false and likely to deceive, and continue to deceive, members of the Class and the general public.

117.  In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§ 17500 *et seq.*

118.  The misrepresentations and non-disclosures by Defendants of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§ 17500 *et seq.*

119.  Through their deceptive acts and practices, Defendants have improperly and illegally obtained money from Plaintiffs and members of the Class. As such, Plaintiffs requests that this Court cause Defendants to restore this money to Plaintiffs and the members of the Class, and to enjoin Defendants from continuing to violate California Business & Professions Code §§ 17500, *et seq.*, as discussed above.  Otherwise, Plaintiffs and those similarly situated will continue to be harmed by Defendants' false and/or misleading advertising.

120.  Pursuant to California Business & Professions Code § 17535, Plaintiffs seeks an Order of this Court ordering Defendants to fully disclose the

true nature of their misrepresentations.  Plaintiffs additionally requests an Order requiring Defendants to disgorge their ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interest and attorneys' fees so as to restore any and all monies which were acquired and obtained by means of such untrue and misleading advertising, misrepresentations and omissions, and which ill-gotten gains are still retained by Defendants.  Plaintiffs and those similarly situated may be irreparably harmed and/or denied an effective and complete remedy if such an Order is not granted.

121.    Defendants' conduct is ongoing and continues to this date.  Plaintiffs and the Classes are therefore entitled to the relief sought.

## COUNT V

### Violation of Cal. Bus. & Prof. Code § 17533.7 on behalf of the California Subclass

122.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

123.    Defendants uniformly label their AvoDerm dog and cat food products with the "Made in the USA" label.

124.    It is unlawful to sell in California products which contain the representation "Made in the U.S.A." or similar words if one or more articles, units, or parts has been entirely or substantially made, manufactured, or produced outside of the United States and all of the foreign articles, units or parts make up more than 5 percent of the final wholesale value of the product.

125.    Defendants use foreign-sourced ingredients in all their AvoDerm dog and cat food products, specifically avocados that are grown, sourced and/or dehydrated in foreign countries and avocado oil that is sourced from avocados grown in foreign countries and/or pressed in foreign countries, including Mexico.

/ / /

126.   On information and belief, the avocado and/or avocado oil in AvoDerm products are "articles, units, or parts" and comprise more than 5 percent of the final wholesale value of the AvoDerm cat and dog food Defendants manufacture, market and sell.  Thus, Defendants have violated section 17533.7 of the Business and Professions Code for each product labeled with "Made in the USA" during the class period.

127.   Defendants' violations of Bus. & Prof. Code § 17533.7 as set forth herein were done with awareness of the fact that the conduct alleged was false and was motivated solely for Defendants' wrongful self-interest, monetary gain and increased profit.  Plaintiff further alleges that Defendants committed these acts knowing the harm that would result to Plaintiff and members of the Class and Defendants engaged in such unfair and deceptive conduct notwithstanding such knowledge.  Alternatively, Defendants should have known that these acts would result in harm to Plaintiff.

128.   As a direct and proximate result of Defendants' violations of Bus. & Prof. Code § 17533.7, Plaintiff and the Class have been harmed and are entitled to restitution of excess monies paid to Defendants by Plaintiff and the Class relating to the false "Made in the U.S.A." representations set forth on the Defendants' packaging and in their advertising and marketing of AvoDerm dog and cat food products.

129.   In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which is available to a prevailing plaintiffs in class action cases such as this matter.

/ / /

/ / /

/ / /

/ / /

/ / /

**COUNT VI**

**Violation of the Washington Consumer Protection Act - Wash. Rev. Code**

**Ann. §§ 19.86.010 *et seq.* on behalf of the Washington Subclass**

**Non-Per Se Unfair Business Practices**

130.   Plaintiffs re-alleges and incorporates by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

131.   Defendants are "persons" with the meaning of the Washington Consumer Protection Act ("WCPA") section 19.86.010(1), and conduct "trade" and "commerce" within the meaning of WCPA section19.86.010(2).

132.   Plaintiff John Flodin and the class members of the Washington Subclass are "persons" within the meaning of the WCPA section 19.86.010(1).

133.   The conduct described throughout this Complaint is unfair within the meaning of the WCPA section 19.86.010, et seq. because Defendants describe, promise, and/or affirm that avocado and/or avocado oil is a main ingredient in AvoDerm products when it has little, if any, avocado or avocado oil.  Defendants further violate section 19.86.010 by misrepresenting the source and origin of AvoDerm products as "Made in the USA."

134.   Defendants engaged in these unfair acts or practices in the conduct of their business.

135.   The acts and practices described herein are unfair because these acts or practices (i) have caused substantial financial injury to Plaintiff Flodin and the Washington Subclass members; (ii) are not outweighed by any countervailing benefits to consumers or competitors, and (iii) are not reasonably avoidable by consumers.

136.   Defendants' unfair acts and practices impact the public interest. Defendants committed the acts and practices in the course of their everyday business; the acts and practices are part of a pattern or generalized course of business; Defendants committed the acts and practices repeatedly and continually

-39-

both before and after Plaintiff Flodin and the Washington Subclass members' purchased AvoDerm products; there is a real and substantial potential for repetition of Defendants' conduct; and many customers are affected or likely to be affected.

137.    Plaintiff Flodin and the members of the Washington Subclass were injured because: (i) they would not have purchased AvoDerm products had they known of Defendants' misrepresentations or alternatively they would only have paid less for the AvoDerm products if they have known of Defendants' misrepresentations; and (ii) the AvoDerm products did not have the characteristics and geographic origin that Defendants' promised because the products contain very small amounts, if any, of avocado and/or avocado oil and deceptively represent that the AvoDerm products are "Made in the USA" when in fact the avocado and avocado oil used in AvoDerm products, if any, are sourced from avocados grown outside the United States and/or dehydrated and pressed outside of the United States.

138.    As a result, Plaintiff Flodin and the Washington Subclass have been damaged in an amount to be proven at trial.

139.    As a direct and proximate result of Defendants' unfair acts and practices as alleged herein, Plaintiff Flodin and the Washington Subclass members suffered injury in fact and lost money because they would not have purchased the AvoDerm products or, alternatively, they would have only paid less for the AvoDerm products if they had known the truth about the products.

140.    On behalf of himself and other members of the Washington Subclass, Plaintiff Flodin and members of the Washington Subclass seek to enjoin Defendants' unlawful acts and practices described herein, to recover their actual damages, three times actual damages, and reasonable attorneys' fees.

/ / /

/ / /

/ / /

**COUNT VI**

**Violation of the Washington Consumer Protection Act - Wash. Rev. Code**

**Ann. §§ 19.86.010 *et seq.* on behalf of the Washington Subclass**

**Non-Per Se Deceptive Business Practices**

141.   Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

142.   Defendants are "persons" with the meaning of the Washington Consumer Protection Act ("WCPA") section 19.86.010(1), and conduct "trade" and "commerce" within the meaning of WCPA section19.86.010(2).

143.   Plaintiffs and the class members of the Washington Subclass are "persons" within the meaning of the WCPA section 19.86.010(1).

144.   The conduct described throughout this Complaint is deceptive within the meaning of the WCPA section 19.86.010, *et seq.* because Defendants describe, promise, and/or affirm that avocado and/or avocado oil is a main ingredient in AvoDerm products when it has little, if any, avocado or avocado oil.  Defendants further violate section 19.86.010 by deceptively misrepresenting the source and origin of AvoDerm products as "Made in the USA."

145.   Defendants directed these misrepresentations to consumers through their product labels and advertising.

146.   The information misrepresented about AvoDerm products was material in that Plaintiff Flodin and the reasonable consumer would not have purchased or, alternatively, would not have paid a premium for AvoDerm products if they would have known about the falsity of Defendants' representations.

147.   Defendants' misrepresentations are likely to mislead a reasonable consumer acting reasonably under the circumstances.

148.   Defendants' unfair acts and practices impact the public interest. Defendants committed the acts and practices in the course of their everyday business; the acts and practices are part of a pattern or generalized course of

-41-

business; Defendants committed the acts and practices repeatedly and continually both before and after Plaintiff Flodin and the Washington Subclass members' purchased AvoDerm products; there is a real and substantial potential for repetition of Defendants' conduct; and many customers are affected or likely to be affected.

149.   Plaintiff Flodin and the members of the Washington Subclass were injured because: (i) they would not have purchased AvoDerm products had they known of Defendants' misrepresentations or alternatively they would only have paid less for the AvoDerm products if they have known of Defendants' misrepresentations; and (ii) the AvoDerm products did not have the characteristics and geographic origin that Defendants' promised because the products contain very small amounts, if any, of avocado and/or avocado oil and deceptively represent that the AvoDerm products are "Made in the USA" when in fact the avocado and avocado oil used in AvoDerm products, if any, are sourced from avocados grown outside the United States and/or dehydrated and pressed outside of the United States.

150.   As a result, Plaintiff Flodin and the Washington Subclass have been damaged in an amount to be proven at trial.

151.   As a direct and proximate result of Defendants' unfair acts and practices as alleged herein, Plaintiff Flodin and the Washington Subclass members suffered injury in fact and lost money because they would not have purchased the AvoDerm products or, alternatively, they would have only paid less for the AvoDerm products if they had known the truth about the products.

152.   On behalf of himself and other members of the Washington Subclass, Plaintiff Flodin and members of the Washington Subclass seek to enjoin Defendants' unlawful acts and practices described herein, to recover their actual damages, three times actual damages, and reasonable attorneys' fees.

/ / /

/ / /

## COUNT VIII

### Breach of Express Warranty on Behalf of the Nationwide Class

153.   Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

154.   Defendants promised and expressly warranted that its AvoDerm cat and dog food products contained real avocado as a main ingredient, that the avocados and avocado oil used in AvoDerm products are from California avocados, and that AvoDerm products are "Made in the USA."

155.   These promises and affirmations of fact constitute express warranties that became part of the basis of the bargain between Plaintiffs and the members of the Class on the one hand and Defendants on the other.

156.   All conditions precedent to Defendants' liability under the contract, including notice, have been performed by Plaintiffs and the Class.

157.   Defendants have breached the terms of its express warranties by failing to provide AvoDerm cat and dog food products as warranted.

158.   As a result of Defendants' breach of its warranties, Plaintiffs and others similarly situated have been damaged in the amount of the purchase price of the AvoDerm products at issue.

159.   On July 31, 2020, counsel for Plaintiffs emailed George Yuhas, general counsel for Defendant Central Garden & Pet Company a draft of the Class Action Complaint that included these allegations of Defendants' conduct and breach of express warranties, thereby providing requisite notice to Defendants.

### COUNT IX

### Restitution Based on Quasi-Contract and Unjust Enrichment on Behalf of the Nationwide Class

160.   Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

161.   Defendants' conduct in enticing Plaintiffs and the Class to purchase

-43-

AvoDerm dog and cat food products through the use of false and misleading packaging and marketing as described throughout this Complaint is unlawful because the statements contained on the product labels and marketing and advertising are untrue. Defendants took monies from Plaintiffs and the Class members for products promised to be of certain qualities, characteristics and geographic origin even though the products they sold were not as Defendants represented. Defendants have been unjustly enriched at the expense of Plaintiffs and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendants to restore these ill-gotten gains to Plaintiffs and the Class.

162.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

# XIII

# PRAYER

**WHEREFORE,** Plaintiffs, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Class Action Complaint, as follows:

A.     Declaring that this action can be maintained as a class action, certifying the Class as requested herein, designating Plaintiffs as Class Representative and appointing the undersigned counsel as Class Counsel;

B.     Ordering damages and/or restitution in such amount that Plaintiffs and the class members paid to purchase the AvoDerm products or paid as a premium over other products;

C.     Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of Defendants' unlawful, unfair and fraudulent business practices;

D.     Ordering injunctive relief as permitted by law or equity, including

-44-

enjoining Defendants from continuing the unlawful practices as set forth herein,
and ordering Defendants to engage in a corrective advertising campaign;

E.     Ordering compensatory damages for Plaintiffs and the Class;

F.     Ordering statutory damages allowable under Civil Code § 1780;

G.     Ordering statutory penalties for all Counts for which they are
available;

H.     Ordering Defendants to pay attorneys' fees and litigation costs to
Plaintiffs and the other members of the Class;

I.     Ordering Defendants to pay both pre- and post-judgment interest on
any amounts awarded; and

J.     Ordering such other and further relief as may be just and proper.

## IX

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demands a jury trial on all causes of action and issues so triable.

Dated:  March 5, 2021                    **FOX LAW, APC**

*s/* Dave Fox
DAVE FOX
JOANNA FOX
COURTNEY VASQUEZ
*Attorneys for Plaintiffs*
*and the Proposed Class*

CLASS ACTION COMPLAINT