UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FLODIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CENTRAL GARDEN & PET COMPANY, et al.,<br><br>    Defendants. | Case No. 21-cv-01631-JST   (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 170 |

The parties filed a joint discovery letter ("JDL") in which Plaintiffs John Flodin and Aaron Brand ("Plaintiffs") seek to compel Defendants Central Garden & Pet Co. ("Central") and Breeder's Choice Pet Foods, Inc. ("Breeder") to re-offer a 30(b)(6) witness, and also seek an order limiting defense counsel's objections in future depositions. [Docket No. 170 (JDL).] This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, Plaintiffs' motion is granted in part and denied in part.

I. **BACKGROUND**

Plaintiffs allege that Defendants' product labeling falsely represents that their "AvoDerm" pet food products included avocado as an ingredient and that the avocado was sourced from California, when in fact 1) the ingredient was a "dried meal/powder" with avocado making up only a small percentage, and 2) the avocados were sourced from Mexico or other foreign countries, not California. [Docket No. 102 (Third Amended Class Action Complaint, "3AC").]

Plaintiffs served an amended Rule 30(b)(6) deposition notice to Central with 33 topics. [Docket No. 170-1 (Dep. Notice).] Central offered the testimony of Victoria Mann, its current V.P. of Sales Pet Specialty. JDL 2.

Plaintiffs argue that Mann was unprepared and did not provide adequate testimony on

Topics 1-2, 4-6, 8, and 26.  JDL 2.  They request that Defendants re-produce a 30(b)(6) witness to testify as to those topics.  *Id.*  Plaintiffs also argue that Central's counsel made speaking objections, acted as an intermediary to assist Mann in interpreting questions, and improperly instructed Mann not to answer certain questions.  *Id.* at 3-4.  Plaintiffs request an order limiting defense counsel to objecting to form and privilege in future depositions.  *Id.* at 3.

Defendants respond that Mann was prepared and provided adequate testimony on the noticed topics.  *Id.* at 4-5.  As a compromise, Defendants offer to answer written discovery requests about Topics 1-2, 4-6, 8, and 26.  *Id.* at 1.  Defendants contend that a limiting order is unnecessary because the objections made by defense counsel were appropriate.  *Id.* at 6.

The court ordered the parties to file Mann's deposition transcript with highlighted excerpts to support their positions.  [Docket Nos. 175; 176 ("Mann Dep.").]

## II.     DISCUSSION

### A.     Adequacy of Mann's Rule 30(b)(6) Testimony

Rule 30(b)(6) governs notices or subpoenas directed to an organization.  It provides, in pertinent part:

> In its notice or subpoena, a party . . . must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers . . . who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. . . . The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).  "The testimony of a Rule 30(b)(6) designee 'represents the knowledge of the corporation, not of the individual deponents.'"  *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 538 (D. Nev. 2008) (quoting *U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996)).  A Rule 30(b)(6) deponent's role is "to provide the entity's interpretation of events and documents."  *Kelly v. Provident Life & Acc. Ins. Co.*, No. 04CV807-AJB BGS, 2011 WL 2448276 (S.D. Cal. June 20, 2011) (citation omitted).

"Rule 30(b)(6) imposes burdens on both the discovering party and the designating party."  *Great American*, 251 F.R.D. at 538.  On the one hand, the party seeking discovery is required to

2

describe "with reasonable particularity the matters on which examination is requested." Fed. R. Civ. P. 30(b)(6). On the other hand, the responding organization "is required to educate an appropriate Rule 30(b)(6) designee to provide knowledgeable answers reasonably available to the corporation, which includes information ascertainable from claims files, documents produced in this case, information from past employees, witness testimony and exhibits, or any other sources available to the corporation." *Kelly*, 2011 WL 2448276, at *5; *see also Bowoto v. ChevronTexaco Corp.*, No. C 99-02506 SI, 2006 WL 294799, at *1 (N.D. Cal. Feb. 7, 2006) (a corporation "has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition"). Both parties "must confer in good faith" prior to the deposition to determine the deposition's appropriate scope. *See* Fed. R. Civ. P. 30(b)(6). If it "becomes apparent during the deposition that the designee produced is unable to respond to relevant areas of inquiry, the responding party has a duty to designate an additional knowledgeable deponent." *Great American*, 251 F.R.D. at 540.

Plaintiffs argue that Mann was unprepared to testify about Topics 1-2, 4-6, 8, and 26. These topics cover the composition of AvoDerm products including the amount of avocado in them (Topics 1-2, 4), Central's decisions regarding labeling and consumer representations (Topics 5, 6, 8), and marketplace competitors of the AvoDerm products (Topic 26). Dep. Notice. Defendants argue that Mann adequately testified about these topics to the extent that the questions were within the scope of what the parties had agreed upon.

### 1. Product Composition

Plaintiffs asked Mann about the contents of the AvoDerm pet food products. *See, e.g.,* Mann Dep. 135:2-15; 140:1-141:23, 145:10-147:7; 150:12-151:4; 154:22-155:6. Mann's responses were uniformly that she did not know. For example, when presented with an Excel document produced by Defendants which appeared to describe the formula for an AvoDerm dog food product on October 17, 2012, Mann stated that she did not know if the formula ever made it to a consumer, and she could not tell Plaintiffs what the numbers in the document represented. *Id.* at 135:5-19; 140:1-12, 140:17-141:23. When shown a similar Excel document from July 9, 2020, Mann stated that she did not know "[w]hether or not this formula made it to the market," what the

3

numbers in the document meant, and whether there were any changes in the product formula between 2012 and 2020. *Id.* at 146:6-7, 149:16-18, 150:21-151:4. Nor did she know what the words "decreased brown rice" and "decreased brewers rice" in the Excel document meant. *Id.* at 151:7-152:3. When asked straightforwardly, "Was avocado mash a part of the dog formula for [the pet food product] at any time between 2017 and the end of 2020?" Mann replied, "I do not know." *Id.* at 154:22-155:1.

Such questions are squarely in the noticed deposition topics and the answers should reasonably be available to Central as the company that sold the AvoDerm products. *See* Dep. Notice, Topic 1 ("The product composition/formula of AVODERM PRODUCTS"); Topic 2 ("The amount of avocado (meal/powder/oil/mash) in AVODERM PRODUCTS"); Topic 4 ("YOUR decision REGARDING the amount of avocado (meal/powder/oil/mash) in AVODERM PRODUCTS"). Not once was Mann able to provide testimony about the composition of the AvoDerm pet food products. Defendants argue disingenuously that Mann "agreed that the document she was shown said the avocado content was 0.87." JDL 4. Mann actually testified that the number in the document reads "0.87." Mann Dep. 150:19. As she testified repeatedly, she did not know if the avocado content was 0.87% of the pet food, because she did not know what anything in the document meant. *See, e.g., id.* at 149:17-18 ("I do not know what the 0.87 means."). Mann also stated in the deposition that "there's nobody left in the company to testify on these documents" because Central sold Breeder's four years ago. *Id.* at 136:1-3. However, it is not uncommon for a corporation to no longer employ individuals who have memory of a distant event; such problems "do not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Taylor*, 166 F.R.D. at 361. Even if there is nobody currently employed at Central with personal knowledge of the pet food formulas, Central still has a duty to prepare its Rule 30(b)(6) designee about those formulas.

Defendants failed to meet their duty to produce a deponent with sufficient knowledge of Topics 1, 2, and 4.

4

### 2. Consumer Representations

Plaintiffs asked Mann about the representations Defendants made to consumers regarding the avocado content of their products. The court examines each topic in turn.

#### a. Topic 5

Plaintiffs asked about the reasoning behind Central's decision to label the AvoDerm products with representations involving avocados. *See* Dep. Notice, Topic 5 ("YOUR decision to label AVODERM PRODUCTS with the AVOCADO REPRESENTATIONS"). For example, Plaintiffs asked if it was Central's understanding "that consumers would rely on the accuracy of the information that was displayed in" the ingredients list on the packaging. Mann Dep. 42:22-25. Mann replied that she "cannot speculate on what consumers rely on or not," because "there is a lot of information on the package and we cannot say that consumers relied on all of that information on making a purchase." *Id.* at 43:7-10; 44:9-11; 45:11-14, 25. Later, Plaintiffs asked Mann if the "O" in the AvoDerm trade dress design was meant to represent an avocado, and if "Avo" in AvoDerm signified "avocado." *Id.* at 88:25-89:25. Mann replied that she did not know. *Id.* at 89:3-90:20. Defense counsel then interrupted with an objection that the "naming topic" was removed from the scope of the deposition during a prior meet and confer. *Id.* at 91:18-93:6.[1]

In a 30(b)(6) deposition, "the designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions. . . . The corporation must provide its interpretation of documents and events." *Taylor*, 166 F.R.D. at 361. Here, Defendants abdicated their duty to do so. Every time Plaintiffs attempted to ask for Central's position on parts of the product labels allegedly related to avocados, Mann responded that she "can't speculate" or that she did not "know what the consumers were interpreting from" the labels. *See, e.g., id.* at 89:20; 90:19-20. At most, she gave a non-answer: that Defendants "labeled their products

---

[1] The parties apparently do not agree on the outcome of their meet and confer discussions regarding the scope of the deposition topics. The court need not delve into this disagreement because even if some questions fell outside the agreed-upon scope, Mann's testimony was deficient in other areas. In any event, "[i]f the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern (i.e. Fed.R.Civ.P. 26(b)(1)), so that relevant questions may be asked and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under 30(b)(6)." *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 366–67 (N.D. Cal. 2000).

1  truthfully and accurately" consistent with Defendants' "corporate values." *Id.* at 47:14-17; 47:24-
48:1.

Defendants argue that the "O" illustration in the AvoDerm trade dress was created by the prior owner of Breeder, so it was proper for Mann to refrain from testifying about it. JDL 5. Again, even if nobody currently employed by Central has personal knowledge of a deposition topic, Central had a duty to educate Mann on matters "reasonably available" to Central, including Central's position on products it previously had marketed and sold. *See Taylor*, 166 F.R.D. at 361. Defendants failed to produce a deponent with sufficient knowledge of Topic 5.

### b.   Topic 6

Plaintiffs asked questions about the labels printed on AvoDerm pet food bags sold to consumers. *See* Dep. Notice, Topic 6 ("The AVOCADO REPRESENTATIONS made to consumers. This topic includes when and where the AVOCADO REPRESENTATIONS were made."). Plaintiffs presented label designs produced by Defendants in discovery, but Mann could not tell if any of them ultimately had been printed on product bags. *See* Mann Dep. At 117:24-118:16; 118:23-119:15; 120:2-12. Nor could Mann confirm if an internal Excel document that tracked product packaging was an accurate representation of what was printed on bags. *Id.* at 115:18-23; *see also id.* at 176:2-180:9 (Mann testifying that she did not know which labels were ultimately printed, that she did not know how packaging proofs were tracked, that she did not ask anyone about either topic in preparation for the deposition, and that there was nobody she could ask because Central sold Breeder four years ago). To confirm if a given label made it on to a bag, Mann said she "would want to see a bag." *Id.* at 86:1-3. Other than seeing the bag itself, the only way Mann could tell if a label was printed on a bag was by looking at the purchase orders sent to printers, but Mann did not know if Defendants retained any of these purchase orders. *Id.* at 86:23-87:14.

In a similar vein, when Plaintiffs asked if the ingredient labels of AvoDerm dry dog food bags from 2017 to 2020 listed avocado as an ingredient, Mann said she could not answer because there were "47 products over a long period of time." *Id.* at 99:5-17. When Plaintiffs asked if the ingredients list on packaging to consumers from 2017 to 2020 ever changed the word "avocado"

6

to the words "avocado meal/powder," Mann said she did not know. *Id.* at 203:5-13. When Plaintiffs asked if customers between 2017 and 2020 received labeling on AvoDerm products that said "with omega rich avocados," Mann said she did not know. *Id.* at 294:7-12.

"While Rule 30(b)(6) 'is not designed to be a memory contest,' the deponent must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 150 (S.D.N.Y. 1997) (citing *EEOC v. American International Group, Inc.,* No. 93 Civ. 6390, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994)). Courts have acknowledged that adequately preparing a Rule 30(b)(6) deposition can be burdensome; but this burden "is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business." *Taylor*, 166 F.R.D. at 362. This is a false labeling case, and the noticed deposition topic ("when and where the AVOCADO REPRESENTATIONS were made") clearly encompasses the labels printed on pet food bags with the word "avocado" on them. *See* Dep. Notice, Topic 6. Mann should have been prepared to answer questions about which labels were printed on bags during the relevant time period.

Defendants object that "the names of the third-party printers, the time frame for printing the labels, and the process of printing the labels" were not in the noticed topics. JDL 5. Defendants are correct that Mann was not required to know the answers to those specific questions. However, that is no excuse for Mann's lack of knowledge regarding the labels themselves.[2] Defendant failed to produce an adequately prepared deponent for Topic 6.

    c.  **Topic 8**

Plaintiffs asked if Central believed that it was accurate to use the word "avocado" in the ingredients list on the product bags when the actual ingredient was "avocado meal," "avocado

---

[2] Defendants argue that Plaintiffs failed to meet the requirement for a requesting party "to designate, with *painstaking specificity*, the particular subject areas that are intended to be questioned." *Batiste v. City of Richmond*, No. 22CV01188HSGRMI, 2023 WL 2951538, at *2 (N.D. Cal. Apr. 14, 2023) (emphasis in original). "A deposition notice is sufficiently particular when it is relevant to the underlying claims, covers a reasonable period of time, and is narrowly tailored." *Id.* Defendants could have raised this concern in a meet and confer session and, if disputes remained, could have sought a protective order before the deposition. It is inappropriate to complain about it now.

powder," or "avocado oil." *See* Dep. Notice, Topic 8 ("Whether the amount of avocado (meal/powder/oil/mash) in AVODERM PRODUCTS is consistent with the AVOCADO REPRESENTATIONS"). Mann testified, "we have avocado in the formula in the form of meal and powder and oil. We have 'avocado' on the label." *Id.* at 198:22-199:1. She further testified that as a factual matter, Central "always used real avocados," and that "[a]vocado meal is real avocados." *Id.* at 204:6-7, 18. While Plaintiffs may be unsatisfied with the content of Mann's answers, they do not reflect lack of preparation. Mann gave adequate testimony on Topic 8.

### 3. Marketplace Competitors

Plaintiffs asked about AvoDerm's competitors from 2017 to 2020. *See* Dep. Notice, Topic 26 ("Competitors in the marketplace of AVODERM PRODUCTS"). Plaintiffs presented a document from a July 2018 audit in which the companies NutriSource, Wellness, and Canidae were listed, and asked Mann if those companies were competitors for AvoDerm. *Id.* at 286:23-287:23. Mann was able to confirm that those companies were competitors in July 2018, but could not say if they were competitors at any other point in time from 2017 to 2020. *Id.* at 287:25-288:2; 288:13-16. Mann said she "would rather testify off of a document than make a guess." *Id.* at 289:5-6. When Plaintiffs asked Mann to give her best estimate, she said, "I [do] not know, but if you show me a document I will testify." *Id.* at 289:14-290:4.

Mann was not adequately prepared to answer questions on Topic 26. Identifying competitors in this circumstance should be a relatively straightforward process; a pet food company reasonably would be expected to keep track of its competition to stay competitive itself. Plaintiffs were not required to come up with defense-prepared documents and show them to Mann before she had to answer.

In sum, Defendants failed to meet their duty to produce a deponent with sufficient knowledge of Topics 1, 2, 4, 5, 6, and 26. Defendants are ordered to promptly produce an adequately prepared deponent(s) to testify on these topics. Defendants' deponent adequately responded to questions on Topic 8.

### B. Motion for Limiting Order on Defense Counsel's Conduct in Future Depositions

Rule 30(c)(2) governs objections that counsel can make during a deposition. It provides, in pertinent part:

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit the deposition on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party].

Fed. R. Civ. P. 30(c)(2); 30(d)(3). "Counsel for the deponent has a very limited role during the taking of a deposition and conversing with the witness is limited to discussions about whether the objection of privilege should be asserted. [Counsel] is prohibited from acting as a intermediary, interpreting questions, assisting deponent with formulation of the answers or deciding which questions should be answered." *Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 524 (C.D. Cal. 2008) (quoting *In re Amezaga*, 195 B.R. 221, 228 (Bkrtcy. D. Puerto Rico 1996)); *see also Claypole v. Cnty. of Monterey*, No. 14-CV-02730-BLF, 2016 WL 145557, at *3 (N.D. Cal. Jan. 12, 2016) (sanctioning counsel for "making extremely long speaking objections, coaching witnesses, cutting off witnesses and even answering for them").

Plaintiffs seek an order under Rule 30(d) which provides that a party may move for a limiting order "on the ground that [the deposition] is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses" the party. Fed. R. Civ. P. 30(d)(3)(A). The court may limit the manner of a deposition as provided in Rule 26(c), which states that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 30(d)(3)(B); 26(c). Plaintiffs argue that a limiting order is necessary because defense counsel made improper speeches, improperly instructed the witness not to answer certain questions, and acted as an improper intermediary for the witness. JDL 3-4. Defendants assert that defense counsel's objections were "short and succinct," and he "only instructed Ms. Mann not to answer where questions sought privileged

1  information, were manifestly irrelevant, or were designed to harass." *Id.* at 6.

2      Review of the transcript reveals that defense counsel Rothstein's conduct violated Rule
3  30(c)(2). Rothstein repeatedly interrupted Plaintiffs' counsel with argumentative and suggestive
4  objections. Rothstein's conduct interfered with the elicitation of testimony and disrupted the
5  orderly flow of the deposition, and also amounted to attempts to coach the witness. *See, e.g.,*
6  Mann Dep. at 204:20-208:19; 84:6-85:8, 91:16-93:6; 121:4-24; 163:2-167:13; 264:20-265:15.
7  Rothstein also improperly instructed Mann not to answer questions. "As a rule, instructions not to
8  answer questions at a deposition are improper." *Detoy v. City & Cnty. of San Francisco*, 196
9  F.R.D. 362, 365 (N.D. Cal. 2000). "The only exception to Rule 30(c) is where serious harm
10 would be caused. . . . A party may instruct a deponent not to answer only when necessary to
11 preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a
12 motion under paragraph (3) (that the deposition is being conducted in bad faith or to annoy,
13 embarrass or oppress the deponent or party)." *Id.* (citing Fed. R. Civ. P. 30(d)(3)); *see also Doe v.*
14 *Uber Techs., Inc.*, No. 19-CV-03310-JSC, 2022 WL 767088, at *2 (N.D. Cal. Mar. 11, 2022)
15 (finding that counsel's instructions not to answer based on "relevance and harassment" were
16 improper).

17     Plaintiffs' counsel showed an exhibit to Mann in which he merged two exhibits (which had
18 already been presented in the deposition) into one document so that the two were side by side.
19 Rothstein instructed Mann not to answer any questions about it and required Fox to present the
20 documents as standalone exhibits before allowing the deposition to proceed. *Id.* at 181:6-187:12.
21 Defendants appear to contend that merging the exhibits into one document was a bad faith tactic
22 by Plaintiffs intended to mislead the witness. Even if this warranted an instruction not to answer,
23 which it does not, Defendants do not explain how the merged document was misleading.
24 Rothstein's instruction was improper and falls into the pattern of disruptive behavior he displayed
25 throughout the deposition.

26     The court admonishes Rothstein for his unacceptable conduct in defending the Rule
27 30(b)(6) deposition. The court issues this limiting order for all future depositions in this case:
28 deposition objections may be made only where required to preserve the objections. Speaking

1  objections or those calculated to coach the deponent are prohibited.  Counsel may instruct a
2  deponent not to answer a question only when necessary to preserve a privilege, to enforce a
3  limitation directed by the court, or to present a motion under Federal Rule of Civil Procedure
4  30(d)(3).  Counsel shall not engage in any conduct during a deposition that would not be allowed
5  in the presence of a judicial officer.

**IT IS SO ORDERED.**

Dated: July 11, 2024



Donna M. Ryu
Chief Magistrate Judge

11