UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FLODIN, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>CENTRAL GARDEN & PET COMPANY, et al.,<br><br>        Defendants. | Case No.  21-cv-01631-JST   (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 177 |

The parties filed a joint discovery letter ("JDL") in this putative class action in which Defendants Central Garden & Pet Co. and Breeder's Choice Pet Foods, Inc. seek to compel documents from putative class representatives John Flodin and Aaron Brand.  [Docket No. 177 (JDL).]  Upon court order, the parties also filed the transcripts of the depositions of Flodin and Brand, as well as declarations by Flodin, Brand, and Plaintiffs' counsel Courtney Vazquez. [Docket Nos. 191, 192.]  This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, Defendants' motion to compel is granted in part and denied in part.

I.  **DISCUSSION**

Defendants seek two categories of documents.  The first category includes Requests for Production (RFPs) Nos. 23, 28, 29, and 30, which seek information about class representatives' fee arrangements, engagement letters, costs and expenses, and communications with counsel about joining this case.  JDL 1.  The second involves RFP No. 32, which requests documents that class representatives Flodin and Brand relied upon when deciding to pursue this case.  *Id.* at 2.[1]

---

[1] As an initial matter, Plaintiffs argue that Defendants' motion to compel should be dismissed as untimely.  *Id.* at 3-4.  They point out that Defendants first requested and Plaintiffs first objected to

### A. Category 1

Defendants argue that engagement letters and related documents are relevant to class certification because they may show a conflict of interest between the named parties and the class they seek to represent. JDL 1.

Generally, class representative engagement letters are not relevant unless the defendants can substantiate the existence of a conflict, beyond mere speculation. *See, e.g., In re Google AdWords Litig.*, No. C08-03369 JW HRL, 2010 WL 4942516 (N.D. Cal. Nov. 12, 2010) (finding that retainer agreements are not discoverable in class actions where there is no evidence of a suspect incentive structure or conflict of interest); *Larsen v. Coldwell Banker Real Estate Corp.*, 2011 WL 13131127, at *3 (C.D. Cal. Oct. 4, 2011) (finding that the fee agreement was irrelevant and not likely to lead to the discovery of admissible evidence where there was no evidence of a suspect relationship or conflict); *Park v. Webloyalty.com, Inc.*, No. 12CV1380-LAB(JMA), 2018 WL 2017925, at *4 (S.D. Cal. Apr. 30, 2018) (collecting cases).

Defendants cite *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) to support their requests. In *Rodriguez*, the plaintiffs entered into an incentive agreement with class counsel as part of their retainer agreements in which plaintiffs would receive compensation on a sliding scale based on the end settlement or verdict amount. *Id.* at 957. The Ninth Circuit held that such incentive agreements "put class counsel and the contracting class representatives into a conflict position from day one," and should have been disclosed at the class certification stage. *Id.* at 959. The court distinguished incentive agreements from incentive awards, which are discretionary, are sought after a settlement or verdict has been achieved, and are intended to compensate class representatives for work done on behalf of a class. *Id.* at 958-59. Unlike incentive agreements, incentive awards are not inherently problematic. *Id.*

Defendants incorrectly conflate incentive agreements with incentive awards. As *Rodriguez* makes clear, the appropriateness and amount of an incentive award to a class representative is

---

the RFPs approximately two years ago. *Id.* The motion is not untimely because fact discovery has not yet closed. *See* Civil L.R. 37-3 (deadline for filing discovery-related motions is 7 days after the discovery cut-off).

1   determined through exercise of the court's discretion after a settlement or verdict. In contrast, an
2   incentive agreement is part of the retainer agreement and guarantees compensation for class
3   representatives from the start. 563 F.3d at 958-59. Here, the record demonstrates there are no
4   incentive agreements between Plaintiffs and their counsel. Plaintiffs' declarations plainly state
5   that their engagement letters do not contain an incentive agreement. [Docket Nos. 192-4 (Flodin
6   Decl., May 10, 2024) ¶ 4; 192-5 (Brand Decl., May 10, 2024) ¶ 6.] Defendants point to language
7   in Plaintiffs' declarations stating that "if a recovery is obtained for the Class, [Plaintiff] may be
8   eligible for a payment to compensate for [his] efforts and expenses." JDL 2. Again, Defendants
9   unhelpfully confuse the key distinction between an incentive agreement and award.[2]

10   None of Defendants' other citations to the record support the existence of a conflict that
11   would justify production of the engagement letters and related documents. Defendants point out
12   that Brand testified he was "friends" with one of Plaintiffs' counsel prior to bringing this suit.
13   JDL at 1-2, 5. [Docket No. 192-2 (Brand Dep., March 26, 2024) 25:9-19 (explaining that Brand
14   met attorney David Fox at a beach where dogs are allowed.)] The fact that a Plaintiff knows their
15   attorney outside the legal context does not raise a conflict. *See, e.g., In re Google AdWords Litig.*,
16   2010 WL 4942516 (finding that a friendship and professional relationship between some of the
17   plaintiffs with one of the plaintiff's counsel did not suggest a potential conflict). Defendants also
18   argue that Plaintiffs stated in their depositions that they were unsure if they would be compensated
19   for the case and did not remember enough about their retainer agreements to testify about them.
20   JDL 1-2. Having reviewed the deposition transcripts, the court concludes that at most, they
21   demonstrate the unremarkable fact that Plaintiffs are not completely conversant with the ins and
22   outs of their retainer agreements and were not able to recite details about them from memory. The

---

[2] Defendants' other cited cases are ripped out of context. They involve court approval of the lead plaintiff and lead counsel in the context of a securities class action pursuant to the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA requires the court to determine 'the most adequate plaintiff' to serve as lead plaintiff at the outset of the litigation," with a "presumption in favor of the class member with the largest loss." *In re Quintus Securities Litigation,* 148 F. Supp. 2d 967, 972 (N.D. Cal. 2001). As to appointment of class counsel, a court can examine whether the lead plaintiff has used a competitive bidding process to select class counsel. *See, e.g., Armour v. Network Associates, Inc.,* 171 F. Supp. 2d 1044, 1049-1050 (N.D. Cal. 2001).

1  transcripts do not support the existence of an incentive agreement or other conflict justifying

2  production of the requested documents. Defendants' motion to compel responses to RFP Nos. 23,

3  28, 29, and 30 is denied.

**B.     Category 2**

RFP No. 32 requests: "All Documents and Communications Relating to the manner in which You became a party to this Action, including but not limited to advertisements or news articles, solicitations, emails, notices, or correspondence." [Docket No. 177-1.] Plaintiffs responded that they "conducted a reasonable search and diligent inquiry for responsive documents. No non-privileged responsive documents exist within Responding Party's possession, custody or control." *Id.*

Defendants argue that Plaintiffs' response is inadequate. Specifically, Defendants point to Flodin's deposition testimony about how he joined the case. JDL 3. Flodin testified that he became involved with the lawsuit because he "heard about it online" and then called Plaintiffs' counsel. Flodin Dep. 111. He testified that he did not see an advertisement, but he also does not remember what website he was on and does not know where he saw the information. *Id.* at 111, 119. According to Flodin, he found out about the case after purchasing a bag of AvoDerm dog food on August 28, 2020, but before he fed any of it to his dog. *Id.* at 110-112. On August 31, 2020, he received an email from Plaintiffs' counsel. *Id.* at 114-115. The case was filed on March 8, 2021. Defendants reasonably infer that Flodin may have seen an attorney announcement or communication online around August 2020 that caused him to join the lawsuit. JDL 3.

"In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist the responding party should so state with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence." *Goldwater Bank, N.A. v. Elizarov*, No. 521CV00616JWHSPX, 2022 WL 17081192, at *2 (C.D. Cal. Sept. 21, 2022) (citing *Uribe v. McKesson*, 2010 WL 892093, at *2-3 (E.D. Cal. Mar. 9, 2010)). The court is not fully satisfied that Plaintiffs' counsel have made a reasonable search for responsive documents at least with respect to Flodin. Flodin's testimony suggests that he may have seen materials generated by Plaintiffs' counsel that caused him to join

4

the lawsuit. Under these circumstances, it is insufficient for Plaintiffs to state that no documents exist in Flodin's own possession. Plaintiffs must specify whether their counsel searched their own records for responsive announcements or communications that Flodin may have seen prior to joining the case.

Defendants' motion to compel a further response to RFP No. 32 is granted. Plaintiffs promptly shall conduct a reasonable inquiry of documents within their possession, custody and control, including documents within their counsel's control, and shall produce all responsive documents by September 6, 2024. By the same deadline, if no documents are found, Plaintiffs' counsel shall send a letter to defense counsel confirming that they made a reasonable and diligent search and found no responsive documents.

**IT IS SO ORDERED.**

Dated: August 16, 2024



Donna M. Ryu
Chief Magistrate Judge