1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    JOHN FLODIN, et al.,                    Case No. 21-cv-01631-JST

8                      Plaintiffs,

9          v.                                **ORDER DENYING MOTION FOR
                                             CLASS CERTIFICATION**
10   CENTRAL GARDEN & PET COMPANY,           Re: ECF Nos. 173, 187, 188, 189, 190
     et al.,
11
                      Defendants.
12

13          Plaintiffs John Flodin and Aaron Brand bring this putative class action against Defendants

14   Central Garden & Pet Company and Breeder's Choice Pet Foods, Inc. (collectively,

15   "Defendants"), based on allegedly misleading representations regarding Defendants' AvoDerm

16   dog and cat food products.  Before the Court is Plaintiffs' motion for class certification.  ECF No.

17   173.  The Court will deny the motion.

18   **I.      BACKGROUND**

19           **A.      Factual Background**

20          Plaintiffs allege that Defendants' marketing materials—including its logo, advertising, and

21   product labels—mislead consumers into believing that avocado is a main ingredient and/or is

22   present in significant quantities in the AvoDerm products, when there are actually only negligible

23   amounts, if any, of avocado.  *See* ECF No. 102 ¶¶ 2, 41–43 ("TAC").  Plaintiffs point to four

24   specific aspects of Defendants' marketing as misleading: (1) the use of avocado as part of the

25   "AvoDerm" name; (2) the use of an avocado to represent the "o" in the AvoDerm logo; (3)

26   statements that the products are made "with avocados" accompanied by images of avocados; and

27   (4) the display of an avocado grove image across the top of the packaging (collectively, the

28   "Avocado Representations").  ECF No. 173 at 9–10.  Plaintiffs allege that absent the misleading

United States District Court
Northern District of California

Avocado Representations, they would not have purchased the products or would have paid less for them.  TAC ¶ 102.

### B. Procedural Background

Plaintiffs bring claims for violations of (1) the California Consumers Legal Remedies Act ("CLRA"), Cal Civ. Code §§ 1750 *et seq.*; (2) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (4) California Business and Professions Code Section 17533.7; (5) Washington's Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 *et seq.*; (6) unjust enrichment under California Law; and (7) unjust enrichment under Washington law.  TAC at 29–47.

Plaintiffs now seek to certify a class with regard to Counts 1–3 and 5 of the third amended complaint.  They propose a class comprising "[a]ll persons who fall within at least one of the following Subclasses who purchased the Products for household use and not for resale or distribution:" (1) California Subclass: All residents of California who purchased the Products from March 8, 2017 through December 1, 2020; and (2) Washington Subclass: All residents of Washington who purchased the Products from March 8, 2017 through December 1, 2020.  ECF No. 173 at 17.  Defendants oppose the motion; move to exclude the testimony of Plaintiffs' expert witnesses Steven P. Gaskin, Colin B. Weir, and Robert Klein; and move to strike theories of liability set forth in Plaintiffs' motion for class certification that were not pleaded in their complaint.  ECF Nos. 186, 187, 188, 189, 190.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million and at least one member in the proposed class of over 100 members is a citizen of a state different from Defendants.

## III. LEGAL STANDARD

To certify a class, a court "must be satisfied, after a rigorous analysis," that the plaintiffs meet the requirements of Rule 23 of the Federal Rules of Civil Procedure by a preponderance of the evidence.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651,

664–65 (9th Cir. 2022) (en banc) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161

(1982)).  "[P]laintiffs must make two showings."  *Id.* at 663.  First, they must satisfy the

numerosity, commonality, typicality, and adequacy requirements of Rule 23(a):

> One or more members of a class may sue or be sued as representative
> parties on behalf of all members only if: (1) the class is so numerous
> that joinder of all members is impracticable; (2) there are questions
> of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class;
> and (4) the representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a).  Second, they "must show that the class fits into one of three categories"

under Rule 23(b).  *Olean*, 31 F.4th at 663.  Plaintiffs invoke Rule 23(b)(3), which requires the

Court to find "that the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the

certification stage.  Merits questions may be considered to the extent—but only to the extent—that

they are relevant to determining whether the Rule 23 prerequisites for class certification are

satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  Thus, for

example, "[i]n determining whether the 'common question' prerequisite is met, a district court is

limited to resolving whether the evidence establishes that a common question is capable of class-

wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial."

*Olean*, 31 F.4th at 666–67 (emphasis in original).  Courts "must take the substantive allegations of

the complaint as true" but "need not accept conclusory or generic allegations regarding the

suitability of the litigation for resolution through class action."  *Keilholtz v. Lennox Hearth Prods.*

*Inc.*, 268 F.R.D. 330, 335 (N.D. Cal. 2010) (citation omitted).

## IV.    MOTIONS TO EXCLUDE EXPERT TESTIMONY

As a preliminary matter, the parties appear to disagree on the extent to which evidence

must be admissible to be considered on a motion for class certification.  *Compare* ECF No. 187 at

10–12 *with* ECF No. 196 at 13–15.  Defendants request that the Court exclude the testimony and

opinions of three of Plaintiffs' experts: Robert Klein, Steven Gaskin, and Colin Weir.  *See* ECF

Nos. 187, 188, 189.

"Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147–49 (1999)). To satisfy *Daubert*, scientific evidence must be both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91, 597 (1993). The proponent of an expert's testimony bears the burden of proving admissibility. *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Rather than the *Daubert* "gatekeeper" standard, "a lower *Daubert* standard should be employed at this [class certification] stage of the proceedings." *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191 (N.D. Cal. 2004) (quoting *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*, 209 F.R.D. 159, 162–63 (C.D. Cal. 2002)). "[T]he question is whether the expert evidence is sufficiently probative to be useful in evaluating whether class certification requirements have been met." *Id.*

In *Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1004 (9th Cir. 2018), the Ninth Circuit emphasized that "[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class certification." The Ninth Circuit wrote that, just as "the proof required to establish standing varies at the complaint, summary judgment and trial phases," so too is "the 'manner and degree of evidence required' at the preliminary class certification stage . . . not the same as 'at the successive stages of litigation.'" *Id.* at 1006. Then, in *Olean*, 31 F.4th at 665, the Ninth Circuit wrote,

> In carrying the burden of proving facts necessary for certifying a class under Rule 23(b)(3), plaintiffs may use any admissible evidence. *See Tyson Foods*, 577 U.S. at 454–55, 136 S. Ct. 1036 (explaining that admissibility of evidence at certification must meet all the usual requirements of admissibility and citing to Rules 401, 403, and 702 of the Federal Rules of Evidence).

Courts have reconciled the two cases by looking to the context of the Ninth Circuit's holding in *Olean*. In *Palmer v. Cognizant Technology Solutions Corp.*, the district court noted *Olean*'s citation to *Tyson Foods*, in which the Supreme Court "reasoned that the 'permissibility' of using any type of evidence in a class action depends 'on the degree to which the evidence is reliable in

proving or disproving the elements of the relevant cause of action.'"  No. CV 17-6848-DMG

(PLAx), 2022 WL 18214014, at *2 (C.D. Cal. Oct. 27, 2022) (quoting *Tyson Foods*, 577 U.S. at

455).  The district court turned to the Ninth Circuit's holding in *Sali* and wrote,

> In *Sali*, the court stated that a district court "evaluating challenged
> expert testimony in support of class certification [. . .] should evaluate
> admissibility under the standard set forth in *Daubert*." . . . The court
> also stated that a trial court "may consider whether the plaintiff's
> proof is, or will likely lead to, admissible evidence." . . . But the court
> concluded that "admissibility must not be dispositive.  Instead, an
> inquiry into the evidence's ultimate admissibility should go to the
> weight that evidence is given at the class certification stage." . . . This
> reasoning, which emphasizes the values of reliability and relevance
> rather than "evidentiary formalism," comports with the Supreme
> Court's reasoning in *Tyson Foods*.  For this reason, the Court does not
> understand the en banc panel in *Olean* to have overruled *Sali*.  This
> Court thus reads the Ninth Circuit's statements regarding
> admissibility in *Olean* in light of those earlier decisions, and
> emphasizes the reliability and relevance of evidence rather than the
> form of the evidence.

*Id.* (alteration in original) (citations omitted).  The Court agrees that *Sali* and *Olean* are

reconcilable on this basis and adopts this approach.  *See In re Delta Airlines, Inc.*, No. LA CV20-

00786-JAK (SKx), 2023 WL 2347074, at *5 (C.D. Cal. Feb. 8, 2023).  Accordingly, the motions

to exclude are denied.[1]  The Court will consider both parties' arguments as to the reliability of the

proffered expert testimony to assist in evaluating the weight of the evidence as it relates to class

certification.  *See, e.g., Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 297 (N.D. Cal. 2020)

(denying motion to strike expert testimony because *Sali* "explicitly instruct[s] that a *Daubert*

analysis alone, while relevant, should not prevent a court from considering expert testimony at the

class certification stage"); *Bess v. Ocwen Loan Servicing LLC*, 334 F.R.D. 432, 437, 400 (W.D.

Wash. 2020) (finding that an expert's methodology had "little or no persuasive value" but denying

motion to exclude pursuant to *Sali*).

---

[1] Defendants argue that the advisory committee notes to the 2023 amendment of Rule 702 require
that the *Daubert* analysis at class certification must go to the admissibility—not just weight—of
the evidence.  *See, e.g.*, ECF No. 187 at 12 (arguing that "though 'many courts have held that the
critical questions of the sufficiency of an expert's basis, and the application of the expert's
methodology, are questions of weight and not admissibility[,] [t]hese rulings are an incorrect
application of Rules 702 and 104(a)'" (quoting Fed. R. Evid. 702 advisory committee's note to
2023 amendment)).  But the Court does not read the advisory committee notes so broadly, and
Defendants have not provided any cases applying the 2023 amendment in this way.

United States District Court
Northern District of California

## V.   MOTION TO STRIKE

Defendants also argue that this Court should strike Plaintiffs' arguments about alleged violations of regulations from the Food & Drug Administration ("FDA") and guidance from the Association of American Feed Control Officials ("AAFCO") because they are "new legal theories" that Plaintiffs did not raise in their operative complaint.  *See* ECF No. 190 at 3. Plaintiffs respond that these arguments are not new legal theories and are instead merely evidence demonstrating materiality under the reasonable consumer standard.  *See* ECF No. 195.

The Court agrees with Plaintiffs that their reliance on Defendants' email communications with the FDA and their citation of AAFCO guidelines do not constitute new theories of liability. Plaintiffs cite an AAFCO guideline requiring that "when the name of any ingredient appears . . . on the product label [of a pet food] and includes a descriptor such as 'with' or similar designation, the named ingredient(s) must each constitute at least 3% of the product weight exclusive of water sufficient for processing."  ECF No. 173 at 16.  Plaintiffs make clear that "[w]hether Defendants actually violated FDA or AAFCO regulations is irrelevant in a false advertising case where liability is determined [by] the reasonable consumer."  ECF No. 212 at 9. But the existence of these regulations and guidelines can still reflect some indication that misrepresentations about the weight that an ingredient makes up within a product are material to consumers.  *See Testone v. Barlean's Organic Oils, LLC*, No. 19-CV-169 JLS (BGS), 2021 WL 4438391, at *13 (S.D. Cal. Sept. 28, 2021*)* (finding that "the existence of Food and Drug Administration regulations prohibiting certain of the challenged statements on the Products' labels evidence materiality").  Accordingly, Plaintiffs' reference to the FDA and AAFCO guidelines will be considered as evidence rather than theories of liability, and the Court denies Defendants' motion to strike.

## VI.   MOTION FOR CLASS CERTIFICATION

Plaintiffs move for certification of classes comprised of California and Washington purchasers of the AvoDerm products from March 8, 2017, through December 1, 2020. Defendants oppose the motion on multiple grounds.  First, Defendants challenge Plaintiffs' standing.  Second, Defendants argue that Plaintiffs are not typical under Rule 23(a).  Third,

Defendants argue that common issues do not predominate because Plaintiffs have not presented common proof of class-wide deception or materiality of the alleged misrepresentations, and because Plaintiffs have not presented a class-wide method of calculating damages according to their theory of liability.[2]

### A.    Plaintiffs' Standing

"In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Svc.*, 511 F.3d 974, 985 (9th Cir. 2007).  To establish Article III standing, a plaintiff in federal court must meet three requirements.  First, the plaintiff must have suffered an "injury in fact": an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted).  "[S]tanding is 'claim-and relief-specific, such that a plaintiff must be able to establish Article III standing for each of her claims and for each form of relief sought.'" *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1064 (N.D. Cal. 2015) (quoting *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1218 (N.D. Cal. 2014)).  At the class certification stage, "plaintiffs 'must show standing through evidentiary proof.'" *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1058 (N.D. Cal. 2016) (quoting *Moore v. Apple Inc.*, 309 F.R.D. 532, 539 (N.D. Cal. 2015)).

---

[2] Plaintiffs argue that the numerosity requirement is met because Defendants made "sales in the tens of millions of dollars for the Products during the Class Period" in California and Washington. ECF No. 173 at 18.  Defendants do not dispute these figures or that numerosity is met here, so Plaintiffs have satisfied the numerosity requirement.  Similarly, Plaintiffs assert that they and their counsel have no conflicts of interest with other class members and that counsel "has vigorously protected the interests of the Class and litigated this action efficiently and effectively," including by prevailing against Defendants' 12(b) motions and conducting robust discovery.  ECF No. 173 at 21–22.  Defendants do not contest Plaintiffs' assertions or otherwise challenge Plaintiffs' adequacy.  The adequacy requirement is also satisfied.

United States District Court
Northern District of California

1    The core of Plaintiffs' alleged injury under each of their claims is that they would either

2    not have purchased, or would have paid less, for the AvoDerm products absent the Avocado

3    Representations.  Such an injury is sufficient to establish Article III standing.  *See Mazza v. Am.*

4    *Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) (concluding that allegations that the

5    plaintiffs would not have purchased Honda's collision mitigation braking system, or would have

6    paid less for it, if its limitations were fully disclosed was sufficient to establish Article III injury in

7    fact), *overruled in part on other grounds by Olean*, 31 F.4th 651.

8    Defendants argue that Plaintiffs lack standing to bring their claims because they "both

9    testified [in their depositions] that the specific Alleged Avocado Misrepresentations were not

10   misleading."  ECF No. 186 at 35–36.  But the deposition testimony that Defendants cite, which

11   was given in response to Defendants' leading questions, suggests only that it's *possible* that

12   individual components of the Avocado Representations could convey concepts other than

13   implying a certain amount of avocado in the products.  *See, e.g.*, ECF No. 186 at 35 ("Q. [T]he

14   Avo in AvoDerm and the 'O' with the two leaves over it *could* just signify that it's got avocado in

15   it, right? A. Sure[.]") (emphasis added); *id.* ("Q. Okay. But it *could* also mean that it's a special

16   ingredient, right? . . . A. A special ingredient? I guess so. Sure.") (emphasis added).  Other

17   testimony was broadly consistent with Plaintiffs' theory of injury.  When later asked where he saw

18   "avocado being advertised as the principal ingredient," for example, Brand responded, "I mean,

19   the bag itself has avocados all over it.  The 'O' in AvoDerm is an avocado.  And, you know, it

20   mentions that they use avocados in the food."  ECF No. 186-2 at 133:24–134:5.

21   Defendants also argue that Brand "lacks statutory standing because he made clear that he

22   was not relying on the Alleged Avocado Misrepresentations when he purchased AvoDerm," citing

23   deposition testimony where Brand stated that he purchased the AvoDerm products for reasons

24   unrelated to the Avocado Representations—independent research about the health benefits of

25   avocados and the attractive AvoDerm packaging.  ECF No. 186 at 36.  But "[w]hile a plaintiff

26   must show that the misrepresentation was an immediate cause of the injury-producing conduct, the

27   plaintiff need not demonstrate it was the *only* cause."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326

28   (2009) (emphasis added).  And Brand also testified that he decided to purchase the Products

because the product packaging implied that "it was made with real avocados."  ECF No. 186-2 at 59:2-3.  Brand has thus sufficiently shown that the Avocado Representations were an immediate cause for his injury in purchasing the AvoDerm product.  Accordingly, the Court finds that Plaintiffs have standing to bring their claims.

### B.    Typicality

Typicality exists if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "Typicality is a 'permissive standard[ ]'" that "'refers to the nature of the claim . . . of the class representative, and not to the specific facts from which it arose or the relief sought.'"  *Johnson v. City of Grants Pass*, 50 F.4th 787, 805 (9th Cir. 2022) (alteration in original) (first quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); and then quoting *Parsons*, 754 F.3d at 805).  "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508 (citation and quotation omitted). However, "[t]he mere fact that a putative class representative, whose claims arise from the same course of events and are based upon the same legal theory as the other members of the proposed class, is subject to a unique defense does not render her atypical for purposes of class action certification unless that defense threatens to become the focus of litigation thereby prejudicing the absent class members." *Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 557 (D. Idaho 2010) (quoting *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250 (D. Mass. 2005)).

Defendants argue that Plaintiffs are not typical for the same reasons that they lack statutory standing.  But as stated in the Court's analysis on standing, Defendants have not shown that Plaintiffs were not injured by the alleged misrepresentations.  And while Plaintiffs may have considered other facts or representations about AvoDerm before purchasing its products, Defendants have not shown how these differences in purchasing experience would threaten to

become the focus of litigation.  The Court therefore concludes that Plaintiffs' claims satisfy the typicality requirement under Rule 23(a).

### C.    Commonality and Predominance

"Commonality" is a shorthand way of describing Rule 23's requirement that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Wal-Mart Stores, Inc. v. Dukes*, 546 U.S. 338, 359 (2011) (internal citation omitted).  Where questions common to class members present significant issues that can be resolved in a single adjudication, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (quotation marks and citation omitted).  However, the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  The inquiry turns on whether "the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67 (emphasis in original).  Courts consider whether a plaintiff has demonstrated that "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof," or if "members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods*, 577 U.S. at 453.

In seeking to certify a Rule 23(b)(3) class, Plaintiffs must show that these common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  "The predominance test of Rule 23(b)(3) is 'far more demanding' than the commonality test under Rule 23(a)(2)." *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 607 (N.D. Cal. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).  "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (quoting *Tyson Foods*, 577 U.S. at 453).  "[T]o carry their burden of proving that a common question predominates, [plaintiffs] must show that the common question relates to a central issue

United States District Court
Northern District of California

1   in the plaintiffs' claim." *Id.* at 665. The predominance inquiry requires that Plaintiffs demonstrate

2   that common questions predominate as to each cause of action for which they seek class

3   certification. *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir.

4   2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017).

5           Plaintiffs argue that commonality is satisfied because common questions arise and

6   predominate from Defendants' uniform packaging, including "(1) whether the Avocado

7   Misrepresentations are false and misleading; (2) whether the Avocado Misrepresentations violated

8   California and Washington consumer protection statutes; and (3) whether Plaintiffs and the Class

9   members have sustained damage as a result of Defendants' conduct." ECF No. 173 at 19, 23–29.

10  Defendants argue that Plaintiffs have not demonstrated any common method of proving class-

11  wide deception or materiality of the alleged misrepresentations and that Plaintiffs have not

12  presented a class-wide method of calculating damages. ECF No. 186 at 19–35.

13          The Court agrees with Defendants that Plaintiffs have not advanced a class-wide method of

14  calculating damages tied to their theory of liability.[3]

15                    **1.    Plaintiffs' Proposed Damages Model**

16          Defendants contend that Plaintiffs' damages model fails because the reports of Plaintiffs'

17  experts, Gaskin and Weir, are unreliable and inadmissible. *Id.* at 32–35; *see also* ECF Nos. 187,

18  188, 218, 220.

19          Rule 23(b)(3)'s predominance requirement applies to questions of damages. "Plaintiffs

20  must be able to show that their damages stemmed from the defendant's actions that created the

21  legal liability." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987–88 (9th Cir.

22  2015) (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)). To satisfy this

23  requirement, Plaintiffs must show that "damages are capable of measurement on a classwide

24  basis." *Comcast v. Behrend*, 569 U.S. 27, 34 (2013). And "a model purporting to serve as

25  evidence of damages in [a] class action must measure only those damages attributable" to the

26  relevant theory of liability. *Id.* at 35; *see also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170,

27

28  _____
    [3] In light of this conclusion, the Court need not reach Defendants' other arguments regarding why
    Plaintiffs have not established commonality or predominance.

1182 (9th Cir. 2017) (a party seeking certification "must show a classwide method for damages calculations as a part of the assessment of whether common questions predominate over individual questions"), *rev'd and remanded on other grounds*, 139 S. Ct. 710 (2019).

The Ninth Circuit has emphasized that although "the need for individualized findings as to the *amount* of damages does not defeat class certification," *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) (emphasis added), a plaintiff must still proffer a common methodology for *calculating* damages or restitution. *See, e.g., Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("Medline's computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties for each claim."); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) ("Pulaski's principal method for calculating restitution employs Google's Smart Pricing ratio, which . . . set[s] advertisers' bids to the levels a rational advertiser would have bid if it had access to all of Google's data . . . ."); *see also Lambert*, 870 F.3d at 1182.

To prove damages on a class-wide basis, Plaintiffs propose a conjoint-based damages model[4] that allegedly calculates the price premium attributable to the products' labeling misrepresentations. Plaintiffs propose two parts to their conjoint model. First, Gaskin would measure the price premium attributed to the Avocado Representations by surveying 400 relevant customers to estimate how much they would be willing to pay for a dry dog food product that is "Made with Avocado." ECF No. 173 at 28; ECF No. 171-37 ¶¶ 9, 55. Gaskin's proposed model would "show 400 relevant consumers three product profiles made up of varying features" and ask them "as part of a series of 'choice sets' composed of (i) Brand, (ii) Claims and (iii) Price to indicate their preferred product profile." ECF No. 196 at 8. The survey would include six packaging claim attributes—one stating that the product is "Made with Avocado" and five other

---

[4] "In conjoint analysis, we determine what value a customer places on a particular feature of a product by measuring the partial value ('partworth' utility) of multiple individual features of the product. For example, we measure the value to the customer of the product offered in several combinations, some of which might contain feature 1 (but perhaps not feature 2), some of which might contain feature 2 (but perhaps not feature 1), and some of which might contain both features 1 and 2. We can use the data we collect to isolate the value to the customer of one particular feature." *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012).

United States District Court
Northern District of California

unrelated "distractor attributes."  *Id.*

Below is an example of a choice task[5] for a survey respondent:



---

[5] A "choice task" is the task a consumer performs in choosing among a set of alternatives.  James R. Bettman & Michael A. Zins, "Information Format and Choice Task Effects in Decision Making," 6 J. Consumer Rsch. 141, 141 (Sep. 1979).

1    ECF No. 171-37 at 8 fig. 1.  After Gaskin's proposed model derives the price premium attributable

2    to the misrepresentations, Weir would estimate the total class-wide damages by multiplying that

3    price premium percentage by the total sales of the AvoDerm products during the Class Period.[6]

4    ECF No. 173 at 29.

5         Defendants argue that Gaskin's proposed model violates the requirements of *Comcast*

6    because his model does not align with Plaintiffs' theory of liability.  While Plaintiffs' theory of

7    liability focuses on the implied *amount of avocado* in the AvoDerm products, Plaintiff's proposed

8    model would capture the price premium attributable to the products being "Made with Avocado"

9    *generally*.  Plaintiffs counter that (1) Klein's survey showed that the package labeling that says

10   "with avocado" did suggest to consumers that there was a certain amount of avocado in the

11   products, and (2) it is proper for a damages model to assume the plaintiff's theory of liability is

12   true when testing for the price premium.  ECF No. 212 at 18–19.  Plaintiffs' responses

13   misconstrue the fundamental error with Gaskin's proposed model.  The issue is not whether

14   Plaintiffs will be able to prove that the Avocado Representations mislead reasonable consumers

15   into believing the AvoDerm products are made with a certain amount of avocado.  Instead, the

16   problem is that even assuming that Plaintiffs prove Defendants are liable, whether the products are

17   made with avocado *at all* is a different theory of liability from whether the products contain

18   *enough avocado* for it to constitute a main ingredient.

19        Plaintiffs assert that "this case is and always has been about the alleged deception in the

20   implied amount of avocado."  *See also* ECF No. 196 at 16 (internal quotation marks and citation

21   omitted).[7]  At least superficially, Plaintiffs' experts appear to acknowledge Plaintiffs' theory of

22   liability and the kind of evidence that would support it.  For example, Plaintiffs' consumer survey

23   expert, Klein, stated that he designed his consumer perception survey to evaluate "the effect of the

24   alleged Avocado Representations . . . on relevant consumers' belief regarding *how much avocado*

---

[6] Defendants argue that Weir's class-wide damages calculations would be unreliable because they
would incorporate Gaskin's unreliable price premium percentage.  The Court thus addresses only
the reliability of Gaskin's model.

[7] *See also* ECF No. 212 at 6–7 (same); TAC ¶ 7 ("[T]he avocado in AvoDerm is still not present in
any principal amount to qualify as a main ingredient of the product as it is marketed and
advertised to be.").

United States District Court
Northern District of California

consumers believe AvoDerm contains." ECF No. 173 at 25 (emphasis added). During his deposition, Klein confirmed that he was not attempting to measure consumer deception regarding whether the product communicated that it was "made with avocado." ECF No. 186-6 at 112:12–15 ("Q. You were not trying to get a deception percentage based on the respondents that reported back 'made with avocado,' [in the filter question of his survey] correct? A. That's correct."). Similarly, Gaskin also describes the alleged misrepresentations to be that "Defendants falsely represented the Class Products as containing avocado as a main ingredient." ECF No. 171-37 ¶ 8; *see also* ECF No. 212-8 ¶ 6 ("Plaintiffs allege that the Defendants' representations were false and misleading because any avocado in the product was a dried powder/meal and neither it, nor avocado oil, were present in any principal amount or constituted main ingredients in the Class Products.").

Yet Gaskin then proposes a model that only measures a claim that the product is "Made with Avocado" generally and is unable to provide any explanation as to how that claim connects to the misrepresentations about avocado being a main ingredient. ECF No. 187-5 at 63:6–12 ("Q. [H]ow does 'made with avocado' connect with the concept of main or principal ingredient that you just brought up? A. Really that's beyond the scope of my assignment. I just understand that I'm to use the phrase 'made with avocado.' That's plaintiffs' theory of liability, and I'm following it."). Surprisingly, Gaskin apparently made no independent effort to design an appropriate method to measure the price premium attributable to the misrepresentations in this case and instead merely accepted "Made with Avocado" as the relevant claim from counsel. *See id.* at 129:20–130:1 ("Q. Okay. And did you use any sort of independent thinking when that phrase ['Made with Avocado'] was adopted in your report? A. Well, it's not really my job to evaluate that phrase mentally. I know what 'made with avocado' means to me, but that's the phrase I was asked to test, the claim I was asked to test.").

By aiming to measure the price premium attributable to the products being "Made with Avocado" generally, Gaskin's proposed model fails to "measure only those damages attributable to" the alleged misrepresentations about the *amount* of avocado. The set of *McMorrow* cases cited by both parties is instructive here. In *McMorrow v. Mondelēz Global, Inc.*, the plaintiffs there

1   brought a putative class action against Mondelēz Global LLC ("MDLZ"), alleging that MDLZ

2   engaged in misleading labeling practices in its belVita Breakfast Products line.

3   *McMorrow v. Mondelēz Int'l, Inc.*, No. 17-CV-2327-BAS-JLB, 2020 WL 1157191, at *1 (S.D.

4   Cal. Mar. 9, 2020) ("*McMorrow I*").  The plaintiffs alleged, for example, that the phrase "4 hours

5   of nutritious steady energy" on the belVita products' packaging was misleading because the

6   products were not actually healthy.  *Id.*  As relevant here, the plaintiffs' damages expert proposed

7   a conjoint survey that would measure the price premium attributable to the claim of "4 hours of

8   nutritious steady energy."  *Id.* at *6.

9         The court found that the inclusion of "steady energy" in the surveyed claim was

10   problematic because "no portion of the Complaint specifically allege[d] that the Products [were]

11   misleading because they in fact [did] not provide the consumer with energy."  *Id.*  The Court

12   found that the proposed damages model was not consistent with the plaintiffs' actual theory of

13   liability because the "proposed survey d[id] not tell the Court whether the respondents would pay

14   a price premium because the product [wa]s advertised as being 'nutritious,' or because it [wa]s

15   advertised at providing 'steady energy,' or a combination of the two."  *Id.* at *9.  The court thus

16   denied the plaintiff's motion for class certification without prejudice.

17         Following *McMorrow I*, the plaintiffs there revised their damages model and moved once

18   again for class certification.  This time, the plaintiffs' proposed conjoint survey would isolate the

19   price premium attached only to the term "nutritious"—either as part of a phrase ("4 hours of

20   nutritious steady energy" versus "4 hours of steady energy") or as a standalone attribute.

21   *McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-2327-BAS-JLB, 2021 WL 859137, at *7 (S.D. Cal.

22   Mar. 8, 2021) ("*McMorrow II*").  With these revisions, the *McMorrow II* court found that the

23   plaintiffs' renewed class certification motion "set[] forth a class-wide damages model that [could]

24   measure damages attributable to [their] theory of liability."  *Id.* at *14.

25         Here, Gaskin's proposed damages model resembles the model rejected in *McMorrow I*.  As

26   discussed above, Plaintiffs' theory of liability focuses on whether the Avocado Representations

27   misrepresent avocados as being a main ingredient or present in a principal amount in the products.

28   Their theory of liability is not that there is *no* avocado in the products.  Indeed, Klein stated that he

United States District Court
Northern District of California

did not consider the phrase that the products were made "with avocado" to be false.  ECF No. 186-6 at 108:20–109:1 ("Q. So AvoDerm is made with avocado according to the ingredients, correct? A. Correct. Q. Okay. So there's nothing false about the phrase made with avocado as far as you're concerned, right? A. I don't consider it false, no.").  And to the extent that Plaintiffs argue that a reasonable consumer could find that the products contain no "real" avocado because they contain only dried avocado meal, Plaintiffs have provided no explanation of how dried *avocado* meal— made from dried avocado flesh—does not constitute "real avocado."[8]

Like in *McMorrow I* and unlike in *McMorrow II*, by proposing to measure the price premium attributable to the claim "Made with Avocado" generally, the proposed survey would not explain "whether the respondents would pay a price premium because the product is advertised as [having avocado at all], or because it is advertised [as having avocado in a particular amount], or a combination of the two."  *McMorrow I*, 2020 WL 1157191, at *9.  As Defendants' rebuttal expert Dr. Ran Kivetz argues, "consumers may very well value the *presence* of avocado but may not necessarily attach additional value to a particular amount or percentage of avocado being present in the dry dog formula, or to avocado being a 'main ingredient[.]'" ECF No. 187 at 20 (quoting ECF No. 186-16).  So even if Gaskin's proposed model shows that consumers are "willing to pay a premium for a dry pet food product being made with avocado, it cannot demonstrate that consumers are willing to pay a premium *because they expect a specific amount of avocado*."  *Id.*

Plaintiffs offered no response—either in their reply brief or in Gaskin's rebuttal report—to this part of Defendants' motion to exclude Gaskin's testimony and opposition to motion for class certification.  The Court thus takes Plaintiffs' silence as a concession and find that they have failed to set forth an adequate model of damages and restitution.  Plaintiffs' argument that conjoint analyses have been accepted for class certification generally is unavailing.

---

[8] The Court is also skeptical that Plaintiffs could establish that a reasonable consumers would read the Avocado Representations to mean that there was *fresh avocado flesh* in the *dry* kibble.  *See Red v. Kraft Foods, Inc.,* No. CV 10-1028-GW, 2012 WL 5504011, at *2–3 (C.D. Cal. Oct. 25, 2012) (finding that in purchasing a box of crackers, no reasonable consumer would interpret packaging that had the phrase "Made with Real Vegetables" and depicted vegetables to mean that the crackers contained a "*significant amount* of vegetables" because "the product is a box of crackers, and a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables").

1    Because the Court has found that Plaintiffs' proposed model fails for the reasons discussed

2    above, the Court does not reach Defendants' other arguments for why Plaintiff's proposed

3    damages methodology fails.

4                                        **CONCLUSION**

5    For the foregoing reasons, Plaintiffs' motion for class certification is denied.  The Court

6    sets a further case management conference on November 19, 2024 at 2:00 p.m.  An updated joint

7    case management statement is due November 12, 2024.

8    **IT IS SO ORDERED.**

9    Dated:  October 23, 2024



JON S. TIGAR
United States District Judge

United States District Court
Northern District of California